IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHARLIE WASHINGTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:14-cv-60-ECM |
| | ) | [WO] |
| STEVE MARSHALL,[1] *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

On January 27, 2014, Petitioner Charlie Washington ("Petitioner" or "Washington") filed this federal habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging his convictions for capital murder and death sentence in connection with the January 2003 murders of Julian and Florence McKinnon.[2]  The case is fully briefed and ripe for review. Upon thorough consideration of the entire record, and for the reasons set forth below, Washington is not entitled to habeas relief, and his petition is due to be denied without an evidentiary hearing.

---

[1] Pursuant to Federal Rule of Civil Procedure Rule 25(d)(1), Steve Marshall, the present Attorney General for the State of Alabama, is automatically substituted in his official capacity as a party to this action, replacing the former Attorney General, Luther Strange.  Additionally, Terry Raybon, the present Warden of Holman Correctional Facility, is automatically substituted in his official capacity in the place of the former Warden, Walter Myers. *See* FED. R. CIV. P. 25(d)(1).

[2] When filed, this case was assigned to former District Judge Mark E. Fuller. (Doc. 1).  On August 21, 2014, this case was reassigned to then-Chief District Judge W. Keith Watkins (doc. 31); on December 17, 2019, this case was reassigned to District Judge R. Austin Huffaker, Jr. (doc. 48); and on April 9, 2020, this case was reassigned to the undersigned (doc. 52).

# Table of Contents

I. INTRODUCTION ............................................................................................. 1

II. JURISDICTION AND VENUE ...................................................................... 3

III. BACKGROUND ............................................................................................. 3

   A. Guilt Phase of Washington's Trial ....................................................... 3

   B. Penalty Phase of Washington's Trial ................................................... 8

IV. POST-TRIAL PROCEEDINGS AND PROCEDURAL HISTORY ............. 10

   A. Direct Appeal ...................................................................................... 10

   B. Rule 32 Proceedings ........................................................................... 11

   C. The § 2254 Habeas Petition ............................................................... 16

V. STANDARD OF REVIEW ............................................................................ 17

   A. Exhaustion and Procedural Default ..................................................... 17

   B. AEDPA Review of State Court Decisions .......................................... 20

VI. DISCUSSION ................................................................................................ 23

   A. Washington's Claims of Ineffective Assistance of Counsel .............. 23

     1. Washington's IAC Claims Against Trial Counsel at the Guilt Phase .......... 27

     2. Washington's IAC Claims Against Trial Counsel at the Penalty Phase ...... 64

     3. Washington's IAC Claims Against Appellate Counsel ............................... 116

   B. Washington's *Brady* Claims ............................................................ 119

     1. The Merritt Claim ....................................................................... 122

     2. The DNA Report Claim .............................................................. 124

   C. Washington's Claim that Alabama's Capital Sentencing Scheme Violates *Ring v. Arizona*, 536 U.S. 584 (2002) ....................................... 128

   D. Washington's Claim that Alabama's Method of Execution is Unconstitutional . ................................................................................ 130

VII. CERTIFICATE OF APPEALABILITY ..................................................... 132

VIII. CONCLUSION ............................................................................................ 132

## II.  JURISDICTION AND VENUE

Jurisdiction and venue over Washington's petition for writ of habeas corpus are proper under 28 U.S.C. § 2241(d) because he was convicted and sentenced in state court in Elmore County, Alabama, which is within the Middle District of Alabama.

## III.  BACKGROUND

### A.  Guilt Phase of Washington's Trial

An Elmore County, Alabama grand jury indicted Washington on five counts of capital murder in connection with the murders of Julian and Florence McKinnon.  These murders were made capital because they occurred during the commission of a robbery in the first degree, *see* ALA. CODE § 13A-5-40(a)(2); they occurred during the commission of a burglary in the first degree, *see id.* § 13A-5-40(a)(4); and they were committed pursuant to one course of conduct, *see id.* § 13A-5-40(a)(10).  The following excerpt from the trial court's Sentencing Order succinctly states the relevant facts of the case:

> The bodies of Julian and Florence McKinnon were found in their home located at 2810 Tanglewood Drive, Millbrook, Alabama on January 22, 2003.  Julian McKinnon was found upstairs in the master bedroom and Florence McKinnon was found at the bottom of the stairs.  Both had been struck in the head with a hard dense object of some sort and died as a result of blunt force trauma.
>
> Later that day, the Defendant, Charlie Washington, was located with a prostitute in a motel room in Montgomery, Alabama.  He was in the possession of the McKinnons' VW Jetta automobile that had been loaned to him by Julian McKinnon on January 20, 2003, and approximately $8000.00. Of that $8000.00, approximately $6300.00 in cash and coins were found in the car and in the Defendant's motel room.
>
> The Defendant, Julian McKinnon's handyman and helper for several years, drove Mr. McKinnon from Millbrook

3

to Clio, Alabama on January 20, 2003. While in Clio, Mr. McKinnon and Joe Carpenter closed a land deal for which Mr. Carpenter paid Mr. McKinnon $10,000.00 in cash. Of the $10,000,00 cash, over $7000.00 was paid in 100- dollar bills; the balance in 20's and 10's. At some time between 3:30 p.m. and 6:00 p.m., after returning to Millbrook from Clio, the Defendant left the McKinnons' residence in their VW Jetta.

A few hours later, at approximately 8:00 p.m., Anthony Smith saw the Defendant at the "big house" in Montgomery, Alabama and hooked the defendant up with a prostitute. Washington stayed there for a little while and then left. When he returned he gave Mr. Smith a 100-dollar bill for watching his car. The next morning, January 21, 2003, the Defendant was seen at the "big house" in the company of two females smoking crack cocaine. According to Adreanne Merritt, whom the Defendant was with when located by the police, she and Mr. Washington bought and smoked some $400.00 to $700.00 worth of crack cocaine from the afternoon of January 21 until they were apprehended at John's Motel on the afternoon of January 22.

The last time that anyone spoke with the McKinnons was approximately 8:00 p.m. on January 20, 2003 when Washington's friend, Ernestine Howard, called looking for him. The McKinnons' telephone line gave a busy signal for everyone else who tried to call from the morning of January 21 until the telephone in the McKinnons' bedroom was placed back on the hook after their bodies were discovered.

On January 22, 2003, Joe Carpenter rode from Clio to the McKinnons' house in Millbrook arriving at about 9:00 a.m. No one would answer the door, nor would anyone answer the telephone. Pursuant to the McKinnon's daughter's instructions, Mr. Carpenter located the spare key and entered the McKinnons' home where he found Florence McKinnon lying in a pool of blood at the bottom of the stairs.

Law Enforcement personnel responded and the investigation began. It was determined that entry into the house was gained through a broken windowpane and raised window. The contents of Mrs. McKinnon's purse were found scattered all over the kitchen. Other items were strown around the kitchen. The den was ransacked, as was the master bedroom upstairs. In addition to Mr. McKinnon's body, coins were found lying on the bed and floor in the master bedroom.

4

No quantity of cash was found in the McKinnons' home. However, hair consistent with that of a black male was found in Julian McKinnon's clenched hand. Charlie Washington's blood was found near a doorknob on the dining room/laundry room door. Julian and Florence McKinnon's DNA was found in a bloodstain on Charlie Washington's shirt and Julian McKinnon's DNA was found in a bloodstain on Charlie Washington's sock.

(Doc. 20-32 at 3–5).[3]

Washington's trial began on January 12, 2004. He was represented by court-appointed counsel D. Wayne Perdue ("Perdue") and W. Kendrick "Kenny" James ("James"). Some of the evidence presented at trial is summarized below.

The prosecution put on a number of witnesses, including Matt McAlister ("McAlister"), a trace evidence examiner at the Alabama Department of Forensic Sciences ("ADFS"). After being accepted as an expert in trace examination, McAlister testified about his examination and comparison of hairs found in Julian McKinnon's ("Mr. McKinnon") left hand and hairs from Washington's comb. (Doc. 20-6 at 79–90).[4] DNA testing of the hairs was not conducted, but the hairs were observed and compared under a microscope. McAlister took several hairs "and mounted them on microscope slides for microscopic observation and comparison," looking for similarities in categories like color, diameter, pigment, and size. (Doc. 20-6 at 84). McAlister explained that "hair examination

---

[3] Citations to page numbers in documents filed in this case will be to the page number generated by the Court's CM/ECF system.

[4] McAlister had also received hairs found on Florence McKinnon's robe, but his trial testimony was limited to the hairs found in Julian McKinnon's hand. (Doc. 20-6 at 79–90). It appears that, "[a]t the request of Agent Lynn Rhodes of the Alabama Bureau of Investigation," DNA testing of the hairs from Mrs. McKinnon's robe was not performed. (Doc. 20-14 at 129).

is not an exact science," but that hairs from different racial groups have different properties, which allowed him to determine whether each of the hairs came from a Caucasian, an African-American, or an Asian person. (*Id.* at 85–86).  Although he was unable to say with certainty whether the hair from Mr. McKinnon's left hand was in fact Washington's hair, McAlister determined that at least one of these hairs was "consistent" with Washington's hair in both size and shape. (*Id.* at 87, 89).  On cross-examination by James, McAlister acknowledged that the hair from Mr. McKinnon's left hand "could be from any African American person." (*Id.* at 90).

The prosecution also introduced testimony from Pete Macchia ("Macchia"), a forensic scientist at ADFS who was responsible for DNA testing and comparison.  After being accepted as an expert in forensic DNA analysis, Macchia explained the DNA samples he examined and the processes he used to examine them. (Doc. 20-6 at 96–124).  Specifically, Macchia compared three pieces of evidence containing DNA found at the crime scene or on Washington's clothing to DNA samples taken from Mr. McKinnon, Florence McKinnon ("Mrs. McKinnon"), and Washington.  Macchia described the process as follows.  First, the DNA is extracted from the object being tested. (*Id.* at 97).  Then, the tester "quantifies" the DNA, or determines how much testable DNA exists. (*Id.* at 98).  The next step is amplification, which entails making copies of the DNA to examine. (*Id.*).  For the amplification step, Macchia used the PCR method, which he testified was a "widely used procedure" employed "internationally for forensic sciences as well as academics and the medical field." (*Id.* at 99) (testifying that "every forensic lab that [was] doing DNA methods in the United States as well as abroad" was using the PCR method).  Finally, the

DNA is visualized by the tester, and it is at this step where the actual analysis and comparison occurs. (*Id.* at 98). Macchia testified that these procedures had been investigated by a "wide range of higher echelon organizations" and were found to be reliable. (*Id.* at 100).[5]

The first piece of evidence Macchia examined was the lower right portion of the shirt Washington was wearing when he was arrested. (Doc. 20-6 at 116). The stain on Washington's shirt was found to contain a mixture, or multiple sets, of DNA from different people. (*Id.*). Macchia testified that the "combination of genetic traits [was] consistent with having originated from Charlie Washington, Julian McKinnon, and Florence McKinnon." (*Id.*). Because the sample contained a mixture of DNA from multiple individuals, Macchia was unable to conduct a population frequency analysis. (*Id.*). But he could not exclude either of the victims as being the source of some of the DNA. (*Id.*).

The second piece of evidence was a portion of Washington's sock found in the motel room where he was arrested. (*Id.*). The DNA sample from the sock was consistent with Julian McKinnon's DNA. (*Id.* at 117). And because the sock sample did not contain a mixture, Macchia was able to conduct a population frequency analysis. (*Id.*). He found that the "combination of genetic traits occurs in approximately 1 of 38.2 million Caucasians and 1 of 4.33 billion African American random unrelated individuals." (*Id.* at 118).

The third piece of evidence was a swab of a stain found on a door handle at the McKinnons' home. (*Id.* at 120). Macchia testified that the swab sample was consistent

---

[5] Specifically, the procedures were endorsed by the National Research Council to the National Academy of Sciences, the Office of Technology Assessment from Congress, and the National Institute of Justice.

with the DNA profile of Washington, and that neither Julian nor Florence McKinnon could be the source of the stain. (*Id.* at 120–21).

Macchia also examined the hairs taken from Mr. McKinnon's left hand.  He testified that ADFS could not perform DNA testing on these hairs because they contained no nucleated cells,[6] which are required to perform PCR testing on hair. (Doc. 20-6 at 122). Macchia further explained that if there are no nucleated cells, a "mitochrondial DNA analysis" could theoretically be performed, but the ADFS lab in Alabama was not capable of doing mitochrondial DNA testing. (Doc. 20-6 at 122–24).

On January 15, 2004, the jury convicted Washington on all five counts of capital murder.

## B.    Penalty Phase of Washington's Trial

The penalty phase before the jury occurred the same day the jury returned its verdict. The prosecution offered three aggravating circumstances:  (1) Washington committed the murders during the commission of a robbery in the first degree, *see* ALA. CODE § 13A-5-40(a)(2); (2) Washington committed the murders during the commission of a burglary in the first degree, *see id.* § 13A-5-40(a)(4); and (3) Washington committed the murders pursuant to one course of conduct, *see id.* § 13A-5-40(a)(10).

Perdue was responsible for presenting Washington's mitigation case at the penalty phase.  Prior to trial, James hired Dr. Karen Salekin ("Dr. Salekin") to conduct a mitigation

---

[6]  Nucleated cells are present in "the portion of the skin that c[omes] out from the hair the bulb of the hair." (Doc. 20-6 at 122).

evaluation on Washington.  However, James and Perdue elected not to call Dr. Salekin to testify at the penalty phase, a decision which is discussed in more detail later in this opinion.

Perdue called two witnesses to testify in mitigation:  Washington's sisters Linda Hunt and Patricia Glenn.   According to Washington, Perdue's preparation of these witnesses' testimonies was limited to twenty-five minutes between the jury rendering its verdict and the beginning of the penalty phase.  Washington's sisters testified that he was a good brother who cared about and financially supported his siblings, and that he acted as a father to one of his nephews.  In his closing argument, trial counsel urged the jury "not to let emotions control its verdict and pleaded with the jury to spare Washington's life." *Washington v. State*, 95 So. 3d 26, 51 (Ala. Crim. App. 2012).

By a 10–2 vote, the jury recommended that Washington be sentenced to death. Thereafter, the trial court held a sentencing hearing to determine whether it would sentence Washington to life imprisonment without parole or to death as the jury recommended.

On March 15, 2004, the trial court followed the jury's recommendation and sentenced Washington to death. (Doc. 20-32 at 2–9).  In its sentencing order, the trial court found the existence of three statutory aggravating circumstances:  (1) the murders of the McKinnons were committed during the course of a robbery, *see* ALA. CODE § 13A-5-49(4); (2) the murders of the McKinnons were committed during the course of a burglary, *see id.* § 13A-5-49(4); and (3) the murders of the McKinnons were committed by one act or pursuant to one scheme or course of conduct, *see id.* § 13A-5-49(9).  The trial court found the existence of one statutory mitigating circumstance:  Washington had no significant criminal history.  The trial court also considered nonstatutory mitigation evidence and

found the following to constitute nonstatutory mitigating circumstances: Washington's family history and his relationship with his family as evidenced through testimony of Washington's two sisters and information contained in the presentence investigation report.   The information presented in mitigation included, but was not limited to, the following:

> (1) the fact that Washington's father died when he was three years old and he was raised by his mother who, at the time of trial, was elderly and in poor health; (2) Washington's close loving relationship with eight siblings, six children, and several grandchildren; (3) the fact that Washington dropped out of school in the seventh grade; and (4) Washington's involvement with and use of crack cocaine around the time of the murders.

*Washington v. State*, 922 So. 2d 145, 178 n.16 (Ala. Crim. App. 2005).   The trial court found, after "carefully considering the evidence presented" at trial and at sentencing, that the aggravating circumstances "far outweigh[ed]" the mitigating circumstances. (Doc. 20-32 at 7–8).

## IV.  POST-TRIAL PROCEEDINGS AND PROCEDURAL HISTORY

### A.    Direct Appeal

Joseph G. L. Marston, III was appointed to represent Washington on direct appeal. The Alabama Court of Criminal Appeals ("ACCA") affirmed Washington's capital conviction and death sentence. *Washington*, 922 So. 2d 145.   On August 16, 2005, the Alabama Supreme Court issued its Certificate of Judgment, denying Washington's petition for a writ of certiorari. *Ex parte Washington*, No. 1041141 (Ala. Aug. 16, 2005).   On

January 17, 2006, the United States Supreme Court denied Washington's petition for a writ of certiorari. *Washington v. Alabama*, 546 U.S. 1142 (2006).

## B.     Rule 32 Proceedings

On August 14, 2006, Washington, represented by counsel M. Lee Huffaker and Bonnie L. Branum, filed a Petition for Relief from Judgment Pursuant to Rule 32 of the Alabama Rules of Criminal Procedure in the Elmore County Circuit Court ("Rule 32 Petition"). (Doc. 20-11 at 19–99).  In this petition, he raised claims of ineffective assistance of trial counsel at both the guilt and penalty phases of trial.  He also asserted claims for prosecutorial misconduct during the guilt and penalty phases; a claim challenging the admission of evidence obtained incident to an allegedly unlawful, warrantless arrest; a claim challenging the admission of a crime scene photograph and videotape that he alleged inflamed and prejudiced the jury; a claim that he received ineffective assistance of appellate counsel on his direct appeal; and a claim challenging his death sentence as unconstitutional.

In response, the State filed a Motion for Petitioner to Amend his Rule 32 Petition to Comply with Rule 32.6(b).  On September 13, 2006, the Elmore Couty Circuit Court (hereinafter "Rule 32 Court") granted that motion and ordered Washington to file an Amended Petition pleading his claims with greater specificity.  On October 25, 2006, Washington filed an Amended Rule 32 Petition. (Doc. 20-12 at 19–115).  In response, the State filed a combination Answer and Motion to Dismiss some of the claims in the Amended Rule 32 Petition, contending that those claims should be dismissed under various provisions of Rule 32 of Alabama Rules of Criminal Procedure.  More particularly, the State urged that those claims (1) were procedurally barred pursuant to Rule 32.2; (2) failed

11

for lack of specificity pursuant to Rule 32.6(b); or were without merit pursuant to Rule 32.7(d). (Doc. 20-12 at 135–201).  The State did not seek dismissal of all of Washington's claims that he received ineffective assistance of counsel at the trial's penalty phase. Ultimately, the Rule 32 Court dismissed many of Washington's claims, but it allowed some of his penalty phase ineffective assistance of counsel claims to proceed to an evidentiary hearing.

On June 25, 2007, the Rule 32 Court heard oral argument on the State's motion to dismiss. (Doc. 20-24 at 125–202; doc. 20-25 at 3–67).  On July 13, 2007, the Rule 32 Court granted in part and denied in part the State's motion to dismiss the Amended Rule 32 Petition. (Doc. 20-32 at 42–59).  In sum, the Rule 32 Court dismissed Washington's claims that he received ineffective assistance of counsel ("IAC") during the guilt phase. (Doc. 20-32 at 44–51).  As to the penalty phase IAC claims, the Rule 32 Court dismissed his claims that counsel were ineffective (1) by failing to move for a continuance of the penalty phase; (2) by failing to obtain and present independent expert witnesses at the penalty and judicial sentencing phases of trial; (3) by failing to object to the prosecutor's improper statements at the penalty phase, including improper characterization of Alabama's sentencing law; (4) by failing to object to the court's improper instructions on mitigating factors; (5) by failing to object to lethal injection as cruel and unusual punishment; (6) by failing to object to the death sentence as disproportionate in violation of his state and federal rights; (7) by failing to object to the "double counting" of robbery and burglary as elements of capital murder and aggravating circumstances that can justify a death sentence; (8) in their statements at the sentencing hearing which highlighted their failure to present an adequate mitigation

case; and (9) because they did not object to the trial court's express consideration of victim impact testimony from the McKinnons' family about the crime and the appropriate punishment. (*Id.* at 51–55). The Rule 32 Court also dismissed Washington's claim that he was denied his right to the effective assistance of counsel by the cumulative effect of counsel's performance at the penalty phase. (*Id.* at 55). Additionally, the Rule 32 Court dismissed, under Ala. R. Crim. P. 32.6(b) and 32.7(d), Washington's claims that his appellate counsel was ineffective by (1) failing to investigate and present the case for his trial counsel's ineffectiveness, and (2) failing to raise the issue of prosecutorial misconduct on appeal. (*Id.* at 57–58).

Concerning the other, non-IAC claims in Washington's Amended Rule 32 Petition, the Rule 32 Court (1) dismissed his *Brady* claim as procedurally barred under Ala. R. Crim. P. 32.2(a)(3); (2) dismissed his claim that the trial court improperly denied challenges to evidence obtained incident to an unlawful, warrantless arrest as procedurally barred under Ala. R. Crim. P. 32.2(a)(2) and (a)(4); (3) dismissed his claim that the trial court improperly admitted photographs and crime scene videotape that served only to inflame and prejudice the jury as procedurally barred under Ala. R. Crim. P. 32.2(a)(3) and (a)(5); (4) dismissed his claim that his death sentence violates his Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution as procedurally barred under Ala. R. Crim. P. 32.2(a)(3) and (a)(5); and (5) dismissed, under Ala. R. Crim. P. 32.6(b), his claim that the cumulative effect of all errors alleged in his Amended Rule 32 Petition entitled him to relief. (Doc. 20-32 at 55–59).

On December 11–12, 2007, the Rule 32 Court held an evidentiary hearing on the claims that Washington's trial counsel were ineffective at the penalty phase (1) by failing to prepare a mitigation case before the penalty phase; (2) by giving a cursory and inaccurate opening presentation at the penalty phase; (3) by failing to present readily available mitigation evidence to the jury; and (4) in giving a deficient and prejudicial closing argument in the penalty phase. (Doc. 20-25 at 67–203; doc. 20-26 at 3–202; doc. 20-27 at 3–69).  At the hearing, Washington presented testimony from nine witnesses, including James (doc. 20-25 at 182–203; doc. 20-26 at 3–12); Perdue (doc. 20-25 at 73–113); Dr. Salekin (*id.* at 114–173); and Dr. Robert Shaffer ("Dr. Shaffer"), who testified about Washington's mental health (doc. 20-26 at 134–202; doc. 20-27 at 3–25).  Washington also presented testimony from several family members concerning his generous and caring nature, his violent and impoverished upbringing, his history of substance abuse, and his family history of mental illness.  The State presented testimony from its own mental health expert, Dr. Glen D. King ("Dr. King"). (Doc. 20-27 at 25–61).

As discussed in more detail below, James and Perdue testified about their decision not to call Dr. Salekin as a witness during the penalty phase, among other matters.  James testified in relevant part that, after reviewing Dr. Salekin's report and discussing it with her, he determined that she did not uncover helpful mitigation evidence, and that "based on her investigation, her testimony could be actually more harmful than good." (Doc. 20-26 at 4).  Dr. Salekin testified that she considered her mitigation report to have been incomplete when she gave it to James because (1) she did not receive certain records she had requested and instead had to rely on collateral sources for that information; (2) she had

insufficient time to prepare the report; and (3) she did not have the breadth of information she needed for a thorough report. (Doc. 20-25 at 137–39).  James testified, however, that Dr. Salekin did not advise him, at the time of Washington's trial in January 2004, that her report was incomplete. (*Id.* at 197).

Concerning Washington's mental health, Dr. Shaffer, who was accepted as an expert in neuropsychology (doc. 20-26 at 141), testified that Washington suffers from "brain impairment," bipolar II disorder, and substance dependency disorder. (*Id.* at 145, 147).  By contrast, Dr. King, who was accepted as an expert in clinical, forensic, and neurological psychology (doc. 20-27 at 31), opined that Washington does not suffer from bipolar II disorder or any brain impairment other than a below-average IQ of between 80 and 85, which Dr. King did not consider "impairment." (*Id.* at 41–42).

On March 28, 2008, in a Final Order on Washington's Amended Rule 32 Petition, the Rule 32 Court denied Washington's IAC claims that were heard in the evidentiary hearing. (Doc. 20-32 at 60–74).  The Rule 32 Court determined that James and Perdue had made a strategic decision not to call Dr. Salekin at the penalty phase, observing that if she had been called, the jury would have been exposed to damaging information about Washington. (*Id.* at 71–72).  The Rule 32 Court also found that, if Dr. Shaffer had offered his opinion to the jury that Washington suffered from a brain impairment, the State could have called Dr. King to testify that he did not. (*Id.* at 73).  The Rule 32 Court further found that the other new mitigation evidence was entitled to little weight.  Ultimately, the Rule 32 Court found the new mitigation evidence, considered along with the old mitigation evidence, insufficient to alter the court's prior finding that the aggravating circumstances

15

outweighed the mitigating circumstances because the new evidence was either cumulative, entitled to little weight, or subject to rebuttal by the State.

The ACCA affirmed the denial of Washington's Amended Rule 32 Petition. *Washington*, 95 So. 3d 26.  The Alabama Supreme Court denied Washington's petition for a writ of certiorari. *Ex parte Charlie Washington*, No. 1120325 (Ala. Aug. 30, 2013); (doc. 20-32 at 130).  Thereafter, Washington did not file a petition for a writ of certiorari in the United States Supreme Court.

## C.    The § 2254 Habeas Petition

In this petition, Washington claims that he received ineffective assistance of counsel at trial and on direct appeal, and that the prosecution suppressed favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  However, the predominant claims are his IAC claims, which contain numerous categories and subclaims within the categories. Excluding the IAC subclaims, Washington asserts the following claims for relief in his petition, set out *verbatim* and chronologically below:

> I.    Mr. Washington Was Denied Effective Assistance Of Counsel During The Guilt Phase Of His Capital Murder Trial In Violation Of The Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments Of The U.S. Constitution.

> II.   Mr. Washington Was Denied Effective Assistance Of Counsel During The Penalty Phase Of His Trial, Resulting In The Unjust and Unconstitutional Imposition Of The Death Penalty In Violation Of The Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments To The United States Constitution.

> III.  The State Withheld Favorable Evidence For The Defense, Thus Violating Mr. Washington's Federal Constitutional Rights.

IV.   Appellate Counsel Was Ineffective During Mr. Washington's Direct Appeal And Thereby Deprived Mr. Washington Of His Rights In Violation Of The Sixth, Eighth, and Fourteenth Amendments Of The United States Constitution.

(Doc. 1 at 15–81).

In their Answer to the petition, the Respondents counter that for various reasons, all claims Washington asserts are without merit; that the state courts correctly determined that Washington was entitled to no relief on any of his claims; and that on federal habeas review, Washington is not entitled to relief. (Doc. 18 at 5–82).

## V.  STANDARD OF REVIEW

A federal court may issue a writ of habeas corpus for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  In other words, this Court's habeas review is limited to federal constitutional questions. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010).  "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

In reviewing state court proceedings, the federal court applies different standards of review depending on whether the petitioner properly presented his claim to the state courts and whether the state courts addressed the claim.

## A.   Exhaustion and Procedural Default

A petitioner in state custody must exhaust the remedies available to him in the state courts before he can bring his claim in a federal habeas corpus action. 28 U.S.C.

§ 2254(b)(1).  A remedy is "available" if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." *Id.* § 2254(c).  The exhaustion requirement generally permits federal courts to consider only those claims that the petitioner has marshalled through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  This includes filing a petition for discretionary review in the highest court of the state. *See id.*  "[A]n issue is exhausted if 'the reasonable reader would understand [the] [federal] claim's particular legal basis and specific factual foundation' to be the same as it was presented in state court." *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1286 (11th Cir. 2012) (second alteration in original) (quoting *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004)).  Even if exhaustion principles bar relief on a claim, an underlying lack of merit may provide an independent basis for denying the writ. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005) (per curiam).

A habeas petitioner who fails to properly present a claim to the state court and who therefore loses the right to raise the claim within state procedures is said to have "procedurally defaulted" the claim and is no longer able to raise it in either state or federal court. *See Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *see also Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (explaining that "a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance").  However, procedural default

is not an absolute bar to federal habeas relief.  To overcome a procedural default, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Under the first avenue, attorney negligence generally is not cause to excuse procedural default. *Id.* at 753.  However, "[a]ttorney error that constitutes ineffective assistance of counsel" *is* such cause. *Id.* at 753–54.  Attorney error may also supply cause for procedural default "when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding," but the prisoner did not have effective counsel in his first collateral proceeding. *See Martinez*, 566 U.S. at 14; *see also Trevino v. Thaler*, 569 U.S. 413, 429 (2013).  As for "actual prejudice," a habeas petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphases in original).

Under the second avenue for overcoming procedural default, a "fundamental miscarriage of justice" occurs only when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  To meet this standard, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.*

**B.     AEDPA Review of State Court Decisions**

When a state prisoner petitions a federal court for a writ of habeas corpus on grounds that were considered and rejected by the state courts, review is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001).   AEDPA establishes a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Under AEDPA, a petitioner is not entitled to habeas corpus relief in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either:   (1) resulted in a decision which was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or (2) resulted in a decision which was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000).

The "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002).  Under the "contrary to" clause, a federal court may grant relief if the state court "applies a rule that contradicts the governing law set forth" in United States Supreme Court cases, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Id.*; *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003).  A state court's failure to cite

governing Supreme Court authority does not, *per se*, establish that the state court's decision is "contrary to" clearly established Supreme Court precedent—"a state court need not even be aware of [the relevant] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell*, 540 U.S. at 16 (citation omitted).

Under the "unreasonable application" clause, a federal court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Brown*, 544 U.S. at 141; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court making this inquiry should ask whether the state court's application of clearly established Supreme Court precedent was "objectively unreasonable." *McDaniel v. Brown*, 558 U.S. 120, 132–33 (2010); *Wiggins*, 539 U.S. at 520–21. An "unreasonable" application is different from a merely "incorrect" one. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); *Wiggins*, 539 U.S. at 520.

The Supreme Court has summarized these two clauses in simple terms: "[A] state prisoner seeking a writ of habeas corpus from a federal court 'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). A legal principle is "clearly established" for AEDPA purposes if it was found in the holdings—as opposed to the dicta—of a

Supreme Court decision that existed at the time of the relevant state court decision. *Yarborough v. Alvarado*, 541 U.S. 652, 660–61 (2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) (holding that AEDPA "prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established'").

AEDPA also significantly restricts the scope of federal habeas review of state court findings of fact.  A federal court cannot contradict state court factual findings merely because it "would have reached a different conclusion in the first instance." *Williams*, 529 U.S. at 410.  Rather, the state court must have reached an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding" in order for a federal court to grant habeas relief on that basis. 28 U.S.C. § 2254(d)(2).  Even if reasonable minds reviewing the record might disagree about the factual finding in question (or the implicit credibility determination underlying the factual finding), that is not sufficient grounds for a federal habeas court to supersede the trial court's findings. *Wood*, 558 U.S. at 301; *Rice v. Collins*, 546 U.S. 333, 341–42 (2006).  The state court's factual findings are "presumed to be correct," and the petitioner has the burden of rebutting these findings "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).[7]

Deference alone, of course, does not end the inquiry. *See Miller-El v. Cockrell*, 537 U.S. 322, 324 (2003) ("Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review."); *Miller-El v. Dretke*, 545 U.S. 231, 240

---

[7] The precise interplay between sections 2254(d)(2) and (e)(1) remains subject to debate. *See Collins*, 546 U.S. at 339.

(2005) ("The standard is demanding but not insatiable.").   However, by setting forth necessary predicates before state court judgments may be set aside, AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013).

For any claims properly presented to the state courts but left unaddressed, this Court conducts *de novo* review. *Porter v. McCollum*, 558 U.S. 30, 39 (2009); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005).  If reviewed *de novo*, a fact pleading standard is applied. *See* 28 U.S.C. § 2242 (requiring a petition for writ of habeas corpus to "allege the facts concerning the applicant's commitment or detention").  Similarly, Rule 2(c)(2) of the *Rules Governing Section 2254 Cases in the United States District Courts* also requires a petitioner to "state the facts supporting each ground" in the petition. *See also Mayle v. Felix*, 545 U.S. 644, 656 (2005) (acknowledging this particularity requirement).

## VI.  DISCUSSION

The Court will address Washington's claims of ineffective assistance of counsel, both trial and appellate, and then will turn to his *Brady* claims.  The Court will then address two claims Washington raised in his brief but not in his petition:  his claim that his death sentence violates *Ring v. Arizona*, 536 U.S. 584 (2002), and his claim that Alabama's method of execution is unconstitutional.

### A.    Washington's Claims of Ineffective Assistance of Counsel

Approaching a century ago, the Supreme Court recognized that the Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. *See Powell v. Alabama*, 287 U.S. 45 (1932); *Johnson v.*

*Zerbst*, 304 U.S. 458 (1938); *Gideon v. Wainwright*, 372 U.S. 335 (1963).  The "right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684 (1984).  The right to the effective assistance of counsel applies to both trial and appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985).  Further, the *Strickland* test for ineffective assistance of trial counsel also applies to appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 289 (2000); *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001).

Washington claims that he received ineffective assistance of counsel at trial, at both the guilt and penalty phases, and on appeal.  His IAC claims comprise numerous claims and subclaims. (Doc. 1 at 15–81).  In their Answer to the petition, the Respondents counter that Washington received constitutionally effective assistance of counsel both at trial and on appeal, that each allegation of ineffective assistance is without merit, that the state courts correctly determined that Washington was entitled to no relief on any of his IAC claims, and that under the AEDPA, he is not entitled to relief. (Doc. 18 at 5–77).

Before turning to Washington's discrete IAC claims, the Court reviews the clearly established federal law concerning the constitutional right to the effective assistance of counsel.   In *Strickland*, the Supreme Court established the constitutional standard for determining whether a criminal defendant has been denied the effective assistance of trial counsel:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was

> not functioning as the "counsel" guaranteed the defendant by
> the Sixth Amendment. Second, the defendant must show that
> the deficient performance prejudiced the defense. This requires
> showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.   To satisfy the deficient performance prong of *Strickland*, a defendant

must show that counsel's representation "fell below an objective standard of

reasonableness." *Wiggins*, 539 U.S. at 521; *Williams*, 529 U.S. at 390–91.  The defendant

has the burden of proof and must overcome a strong presumption that his trial counsel's

conduct falls within a wide range of reasonable professional assistance. *Strickland*, 466

U.S. at 687–91.  Courts are extremely deferential in scrutinizing the performance of

counsel and make every effort to eliminate the distorting effects of hindsight. *See Wiggins*,

539 U.S. at 523 (holding that the proper analysis under *Strickland*'s performance prong is

an objective review of the reasonableness of counsel's performance under prevailing

professional norms, which includes a context-dependent consideration of the challenged

conduct as seen from the perspective of counsel at the time).  "No particular set of detailed

rules for counsel's conduct can satisfactorily take account of the variety of circumstances

faced by defense counsel or the range of legitimate decisions regarding how best to

represent a criminal defendant." *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009); *Strickland*, 466

U.S. at 688–89.

To satisfy the "prejudice" prong, the defendant must establish a reasonable

probability that, but for the objectively unreasonable conduct of his counsel, the result of

the proceeding would have been different. *Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S.

at 694.  A reasonable probability is a probability sufficient to undermine confidence in the

outcome of the proceeding. *Strickland*, 466 U.S. at 694.  In the capital sentencing context, "the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695; *Gavin v. Comm'r, Ala. Dep't of Corr.*, 40 F.4th 1247, 1263 (11th Cir. 2022).  "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

In those instances where the state courts failed to adjudicate either prong of the *Strickland* test, the federal habeas court reviews the un-adjudicated prong *de novo*. *See Porter*, 558 U.S. at 39 (holding that *de novo* review of trial counsel's performance was necessary because the state courts had failed to address this prong of the *Strickland* analysis).  A habeas petitioner has the burden to prove both prongs of the *Strickland* standard by a preponderance of the evidence. *Ward v. Hall*, 592 F.3d 1144, 1163 (11th Cir. 2010); *Mills v. Singletary*, 63 F.3d 999, 1020 (11th Cir. 1995).

Under AEDPA, IAC claims adjudicated on the merits by a state court are entitled to a doubly deferential form of federal habeas review, at least with respect to the performance prong of the *Strickland* test. *See Pinholster*, 563 U.S. at 190; *see also Evans v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1333–35 (11th Cir. 2013) (en banc) (Jordan, J., concurring) (explaining that double deference to a state court's adjudication of a *Strickland* claim applies only to the performance prong, not to the prejudice prong).

Washington's discrete claims of ineffective assistance of trial counsel are discussed in further detail below, beginning with his guilt phase IAC claims before turning to his penalty phase IAC claims.

### 1.    Washington's IAC Claims Against Trial Counsel at the Guilt Phase

Washington raised his discrete IAC claims concerning trial counsel's performance at the guilt phase in his Amended Rule 32 Petition and on appeal to the ACCA.  With respect to each claim, the Respondents contend that the Rule 32 Court and the ACCA made specific findings of fact, and that in this proceeding, those findings of fact are presumed correct pursuant to 28 U.S.C. § 2254(e)(1).  The Respondents also assert that the ACCA rejected these claims on the merits on Washington's appeal from the denial of post-conviction relief in the court below.  The Respondents argue that the state court's decisions on these claims were neither contrary to, nor an unreasonable application of, clearly established federal law, and that the state court's decisions were based on reasonable determinations of the facts.  Therefore, according to the Respondents, Washington's claims are due to be denied pursuant to 28 U.S.C. § 2254(d).

### a.    Washington's claim that trial counsel inadequately prepared for trial

Washington claims that his trial counsel were inadequately prepared for trial in that they (1) failed to interview key witnesses before trial; (2) failed to interview his extended family before trial; (3) failed to investigate mental health evidence to support defense theories; (4) failed to allow him to view the crime scene after obtaining a court order permitting him to do so; (5) failed to develop a relationship with him; (6) failed to move

for a change of venue; (7) failed to conduct effective voir dire; and (8) failed to procure

necessary expert witnesses. (Doc. 1 at 17–37).

*i.  failure to interview key witnesses before trial*

On the State's motion and following oral argument, the Rule 32 Court summarily

dismissed this claim, finding that it did not comply with Alabama Rule of Criminal

Procedure 32.6(b) because it did not contain a clear and specific statement of the grounds

for which relief was sought.  The Rule 32 Court stated:

> Petitioner fails to allege facts that if proven would entitle him to relief.  Succeeding in [sic] a claim of ineffective assistance of counsel requires that the performance of counsel was outside the range of reasonable professional judgment, or his attorney "made errors so serious that counsel was not functioning as 'counsel' guaranteed the Defendant by the sixth amendment." *Strickland*, 466 U.S. 668, 687 (1984).  In addition, Petitioner must prove that counsel's deficiencies resulted in a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would be different." *Strickland v. Washington*, 466 U.S. 668. 694 (1984).  Petitioner fails to allege exactly how the interviewing of other witnesses would have resulted in a different result for Mr. Washington.

(Doc. 20-32 at 45).

On appeal, the ACCA affirmed, explaining:

> A review of Washington's amended petition shows that he pleaded the names of witnesses he asserts counsel should have interviewed; however, he failed to allege what each witness could have testified to and how he was prejudiced by counsel's failure to interview that witness.  Accordingly, Washington failed to meet his burden of pleading sufficient facts pursuant to Rule 32.6(b), Ala. R. Crim. P.

*Washington*, 95 So. 3d at 59.

Under AEDPA, for purposes of federal habeas review, a state court's dismissal of a claim based on insufficient pleading is considered an adjudication on the merits. *See Frazier v. Bouchard*, 661 F.3d 519, 524–26 (11th Cir. 2011) (holding that dismissal of ineffective assistance claim for failure to allege sufficient facts was a ruling on the merits of the *Strickland* claim and did not constitute a procedural default or otherwise bar federal habeas review of the claim); *Borden v. Allen*, 646 F.3d 785, 815–16 (11th Cir. 2011) ("[A]n Alabama court's consideration of the sufficiency of the pleadings concerning a federal constitutional claim contained in a Rule 32 petition necessarily entails a determination on the merits of the underlying claim; we cannot construe such a rule to be a state procedural bar that would preclude our review.").

In this action, Washington claims that trial counsel failed to interview his family members until the trial had already begun, and that counsel "failed to interview potential witnesses who had contact with Mr. Washington and the McKinnons during the period in question or otherwise possessed relevant knowledge; failed to interview the arresting police officers; failed to investigate other potential suspects; failed to interview numerous character witnesses; and failed to seek important medical and mental health evidence." (Doc. 1 at 17, para. 46).  Washington also contends that trial counsel failed to interview witnesses who could testify about the land sale that occurred before the McKinnons were killed, including Harry Thomas Porter ("Porter"), who allegedly spoke with Mr. McKinnon the night of the murders and was allegedly told that Mr. McKinnon received only $2,200 for the land transaction—not the $10,000 theorized by the prosecution.  According to Washington, Porter also could have testified regarding Mr. McKinnon's statements that he

was going to be paid by check, not cash.  Washington also claims that trial counsel failed to interview certain witnesses who had spent time with Washington or Mr. McKinnon the day of the murders and whose testimony, according to Washington, would have contradicted the testimony of the State's witnesses and undermined the State's theory of the case.

Concerning his claims that trial counsel rendered ineffective assistance because they failed to interview or call certain witnesses, Washington's "burden is particularly 'heavy . . . because often allegations of what a witness would have testified to are largely speculative.'" *McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1365 (11th Cir. 2021) (quoting *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006)).  "[F]or that reason," the Eleventh Circuit has "held that a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness." *Id.*

To establish prejudice in this habeas proceeding, Washington must show that the ACCA unreasonably determined that he had not shown prejudice—i.e., a reasonable probability that the result of the trial would have been different if counsel had interviewed and called these witnesses. *See Harringon*, 562 U.S. at 104–05, 111–12; *Borden*, 646 F.3d at 823.  Here, Washington faces an initial barrier to establishing prejudice because for at least some of the witnesses, he proffers only his own assertions about the matters to which the witnesses would have testified. *See McKiver*, 991 F.3d at 1366.  Additionally, he fails to sufficiently allege that any of these "key witnesses" were available to testify and would have testified at trial.  In any event, considering the entire record, Washington has failed to

show that the ACCA unreasonably determined that he failed to adequately plead that the outcome of his trial would have been different but for counsel's failures to interview and call these witnesses, particularly in light of the substantial physical evidence presented. *See* 28 U.S.C. § 2254(d)–(e); *Strickland*, 466 U.S. at 694.

In sum, Washington's submissions are insufficient to overcome the deference to which the state court's ruling on this claim is entitled, and they are also insufficient to rebut the presumption that the state court's findings of fact on this claim are correct.  On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

*ii.  failure to interview Washington's extended family before trial*

Washington also claims that trial counsel was ineffective because they failed to interview his extended family before trial.   He contends that if counsel had adequately interviewed his family members, counsel would have uncovered information that many of Washington's family members suffer from mental illness, which Washington claims was relevant at the guilt phase to support an insanity defense (which counsel did not pursue), to negate the legal culpability required to convict him, and to challenge the prosecution's motive.

On the State's motion to dismiss and following oral argument, the Rule 32 Court dismissed this claim as to the guilt phase,[8] for the reasons stated below:

> This ground fails pursuant to Rule 32.7(d) because no material issue of fact or law exists that would entitle Petitioner to relief, and no purpose would be served by further proceedings.  Mr. Washington's family history does not affect

---

[8]  The Rule 32 Court allowed this claim to proceed to an evidentiary hearing concerning the penalty phase of Washington's trial.

his guilt or culpability in this matter.  Furthermore, Petitioner's claim that two days was not enough time for Mr. Purdue [sic] or Mr. James to examine Mr. Washington's evaluation from a psychological expert is without merit.  Counsel's ability to evaluate information quickly does not amount to an error so serious that counsel was not functioning as counsel.

(Doc. 20-32 at 45).

On appeal, the ACCA affirmed, explaining:

In this section of Washington's amended petition, Washington failed to list by name any family member whom counsel failed to interview, what evidence he or she could have provided, or how he was prejudiced by counsel's failure to interview that family member for the guilt phase of his capital-murder trial.  Thus, the circuit court correctly found that "no purpose would be served by any further proceedings" in regard to this claim."  Rule 32.7(d), Ala. R. Crim. P.  *See Beckworth v. State*, CR–07–0051, May 1, 2009]  ⸻ So.3d ⸻ (Ala.Crim.App.2009) (a claim that counsel is ineffective for failing to call witnesses is not sufficiently pleaded if the witness is not identified by name). Therefore, the circuit court did not abuse its discretion in summarily dismissing this claim.

*Washington*, 95 So. 3d at 60.

The Rule 32 Court and the ACCA both rendered reasoned decisions on this IAC claim.  After oral argument, the Rule 32 Court found that the claim failed under Ala. R. Crim P. 32.7(d) and dismissed it.  The ACCA affirmed.  This Court reviews the state court's dismissal of this claim as a decision on the merits. *See, e.g.*, *Borden*, 646 F.3d at 815–16.

Washington claims that Dr. Salekin, trial counsel's mitigation investigator, spoke "only briefly" to Washington's mother, sister, and brother.  He asserts that, if counsel had independently interviewed family members, they would have uncovered information that many of Washington's family members suffer from mental illnesses, including

schizophrenia. (Doc. 1 at 26).  According to Washington, this information would have been helpful during both the guilt and penalty phases of trial and includes evidence relevant to Washington's insanity defense, to negate the legal culpability required to convict him, and to challenge the prosecution's motive.

On this record, it was not unreasonable for the ACCA to conclude that Washington had not shown prejudice resulting from trial counsel's failure to interview Washington's family members before trial.  Beyond conclusory assertions, Washington fails to sufficiently explain how his family members' mental illnesses bear on his own culpability, an insanity defense, or the prosecution's theory of motive such that the outcome of the trial would have been different had this mental illness evidence been presented. And Washington cites no United States Supreme Court precedent applying AEDPA to a state court prejudice determination which establishes that the ACCA's decision was unreasonable.  The cases upon which Washington relies, *Payne*, *Wiggins*, and *Rompilla*, address counsel's failures to investigate and present mitigation evidence at the sentencing phase—not failure to interview witnesses for the guilt phase.  Because of these differences, the cases do not aid Washington in showing that the ACCA's prejudice determination with respect to the guilt phase was unreasonable, particularly in light of the substantial physical evidence presented at trial. *See* 28 U.S.C. § 2254(d)–(e); *Strickland*, 466 U.S. at 694; *cf. Jones v. Sec'y, Dep't of Corr.*, 644 F.3d 1206, 1212 (11th Cir. 2011) (per curiam) (concluding that the cases upon which the petitioner relied were "too different" from the petitioner's case for the court to conclude that the state court's decision was unreasonable under AEDPA).  To the extent Washington asserts that trial counsel was ineffective with

respect to the investigation and presentation of mitigation evidence at sentencing, that claim is addressed later in this opinion.

In sum, Washington's submissions are insufficient to overcome the deference to which the state court's ruling on this claim is entitled, and they are also insufficient to rebut the presumption that the state court's findings of fact on this claim are correct.  On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

### iii. failure to investigate mental health evidence to support defense theories in the guilt and penalty phases

Washington also claims that trial counsel were constitutionally ineffective because they failed to investigate mental health evidence to support defense theories in the guilt and penalty phases.  According to Washington, this mental health evidence was relevant at the guilt phase to support an insanity defense, which counsel did not pursue; negate a capital element of the offense; and negate the *mens rea* required for intentional murder.

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed this claim as to the guilt phase, pursuant to Ala. R. Crim. P. 32.6(b), for the reasons stated below:

> This ground fails because it does not contain a clear and specific statement of the grounds upon which relief is sought, and does not include a full disclosure of the factual basis of those grounds pursuant to the requirements of Rule 32.6(b). Further, Petitioner fails to allege specifically from what mental illness Mr. Washington suffers.

(Doc. 20-32 at 46).

On appeal, the ACCA affirmed, explaining:

> We agree with the circuit court that this claim lacked specificity because Washington failed to plead what mental illness counsel could or would have discovered had counsel investigated his mental health. Rule 32.6(b), Ala. R. Crim. P.
>
> Moreover, the record clearly shows that this claim has no factual basis. Counsel moved for a mental evaluation before trial and was in possession of the report completed by doctors at Taylor Hardin Secure Medical Facility. "[D]efense counsel is entitled to rely on the evaluations conducted by qualified mental health experts, even if, in retrospect, those evaluations may not have been as complete as others may desire." *Darling v. State*, 966 So.2d 366, 377 (Fla. 2007). Also, counsel retained a psychologist to assist in mitigation and an investigator. Counsel had no reason to doubt Washington's mental health based on counsel's dealings with Washington. Also, Washington and his mother told counsel that he had no mental illness. Counsel did investigate Washington's mental health. Therefore, there was "no material issue of fact or law" which would warrant further proceedings in regard to this claim. *See* Rule 32.7(d), Ala. R. Crim. P. The circuit court correctly summarily dismissed this claim.

*Washington*, 95 So. 3d at 60.

The Rule 32 Court and the ACCA both rendered reasoned decisions on this IAC claim. The Rule 32 Court found that this claim was deficiently pleaded because it did not meet the heightened pleading requirements of Alabama Rule of Criminal Procedure 32.6(b). In affirming, the ACCA expanded on its pleading deficiencies. This Court reviews the state court's dismissal of this claim as a decision on the merits. *See, e.g.*, *Borden*, 646 F.3d at 815–16.

In this action, Washington asserts that trial counsel failed to adequately investigate whether he had a mental illness, which thereby prevented counsel from seeking out additional medical and mental health evidence about Washington. According to Washington, evidence about his mental health would have been relevant to negating the

legal culpability required to convict him.  Similar to the IAC claim discussed above, Washington also claims that trial counsel failed to adequately interview his family members and discover that many of them suffer from mental illnesses.  Washington contends that this information would have been relevant to an insanity defense—which counsel did not pursue—and to negate the *mens rea* required to convict for intentional murder.

On this record, Washington has not shown prejudice from trial counsel's purported failure to adequately investigate his mental health.  As in state court, Washington fails to specify in this action which mental illness or illnesses counsel would have uncovered through adequate investigation. *Cf. Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1050 (11th Cir. 2022) (en banc) (concluding that the state court did not unreasonably determine the facts when it viewed the evidence of the petitioner's "alleged brain damage as conflicting").  Elsewhere in his petition, Washington alleges that Dr. Shaffer testified at the Rule 32 hearing that Washington suffers from "brain impairment," bipolar II disorder, and substance dependency disorder. (Doc. 1 at 59, para. 175).  Assuming for argument's sake that Washington does suffer from these disorders,[9] and to the extent Washington suggests that trial counsel should have discovered before trial that Washington suffers from these disorders, Washington still cannot show prejudice.  Beyond conclusory assertions, Washington fails to sufficiently allege or explain how these disorders would have been

---

[9]  The State's expert, Dr. Glen D. King, opined that Washington does not suffer from bipolar II disorder or any brain or neurological impairment, and that Washington has no cognitive deficit other than a below-average IQ of 85.

relevant to an insanity defense or to negate the *mens rea* requirement.  He also does not sufficiently allege or explain how his family members' mental illnesses bear on a potential insanity defense, which was not pursued, or the *mens rea* requirement such that the outcome of the trial would have been different had this mental health evidence been presented.

The case upon which Washington relies in support of his prejudice argument, *Payne v. Tennessee*, 501 U.S. 808 (1991), does not compel a different conclusion.  *Payne* addressed counsel's failures to investigate and present mitigation evidence at the sentencing phase, *see generally id.*, which is different from a failure to present mental health evidence at the guilt phase. *See Debruce v. Comm'r, Ala. Dep't of Corr.*, 758 F.3d 1263, 1273 (11th Cir. 2014) ("[D]ecisions about whether to present a mental health defense during the *guilt phase* are separate issues from the decision whether to investigate and present mitigating evidence during *sentencing*.") (emphases in original)).  Because of this difference, *Payne* does not aid Washington in showing prejudice, particularly in light of the substantial physical evidence presented at trial. *See Strickland*, 466 U.S. at 694; *Debruce*, 758 F.3d at 1273; *cf. Jones*, 644 F.3d at 1212.  To the extent Washington asserts that trial counsel was ineffective with respect to the investigation and presentation of mental health evidence for mitigation purposes at sentencing, that claim is addressed later in this opinion.  In sum, Washington is not entitled to federal habeas relief on this claim.

> ### iv.  failure to allow him to view the crime scene after obtaining an order from the trial court permitting him to do so

Washington asserts that trial counsel's failure to allow him to view the crime scene despite the trial court's order permitting him to do so was "yet another abdication of trial counsel's duties." (Doc. 1 at 31).

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed this claim pursuant to Ala. R. Crim. P. 32.6(b) and 37(d), for the reasons stated below:

> This ground fails under Rule 32.6(b) because there is no full factual basis for the grounds for relief.  There are no facts specifically alleged that necessitate a crime scene visit, nor how the information gathered from a visit to the crime scene would have brought about evidence that would have changed the outcome of the trial.
>
> Petitioner's argument that failing to ensure an actual visit also fails under Rule 32.7(d) because it is without merit, because no material issue of fact or law exists that would entitle Petitioner to relief, and no purpose would be served by further proceedings.  Even if Petitioner was allowed to visit the crime scene and point out that "he knew the McKinnon's [sic] kept a key to their house on their front porch," Petitioner fails to demonstrate how the lack of the visit kept him from telling Mr. Purdue [sic] or Mr. James these things.  Mr. Washington could have explained all of the facts alleged without the visit.

(Doc. 20-32 at 46).

On appeal, the ACCA affirmed,[10] explaining:

> In his amended petition, Washington merely asserted that he should have been allowed to view the crime scene with

---

[10]   In reviewing this claim, the ACCA observed:  "The trial record shows that counsel moved that Washington be allowed to visit the crime scene with his attorneys.  (Trial C.R. 21.)  The circuit court granted that motion and noted that the visit would be coordinated with the district attorney's office.  (Trial C.R. 58.) The trial record also shows that counsel visited the crime scene in December 2003." *Washington*, 95 So. 3d at 61 n.5.  Thus, it appears that Washington's counsel visited the crime scene.

> counsel so that he could inform counsel that the McKinnons
> kept a key hidden on the front porch.  Certainly, Washington
> could have informed counsel about the key without visiting the
> crime scene.  Washington failed to plead how he was
> prejudiced by counsel's failure to ensure that he visited the
> crime scene.  The circuit court did not abuse its discretion in
> summarily dismissing this claim.  *See Hyde*, *supra*.

*Washington*, 95 So. 3d at 61.

As explained above, for purposes of AEDPA review, the Rule 32 Court's dismissal of this claim is viewed as a decision on the merits. *See, e.g.*, *Borden*, 646 F.3d at 815–16. In affirming the Rule 32 Court's dismissal, the ACCA explained why the claim was correctly dismissed.

In this action, Washington alleges insufficient facts to establish that, but for the failure of his trial counsel to allow him to view the crime scene, counsel would have discovered any additional information beneficial to him which would have changed the outcome of the trial.  Washington asserts that, had he been allowed to view the crime scene, he could have informed trial counsel that the McKinnons kept a key to their house hidden on the front porch.  However, the state court reasoned that Washington did not need to view the crime scene in order to advise his counsel that the McKinnons hid a key on the front porch.  Washington fails to marshal "clear and convincing evidence" to rebut the state court's factual finding. *See* 28 U.S.C. § 2254(e)(1).  Moreover, Washington has failed to show that it was unreasonable for the ACCA to determine that he failed to show how he was prejudiced by counsel's failure to ensure that he visited the crime scene, that the ACCA's decision was based on an unreasonable determination of the facts, or that any of

the ACCA's factual determinations were incorrect. *See* 28 U.S.C. § 2254(d)–(e); *Strickland*, 466 U.S. at 694.

In sum, Washington's submissions are insufficient to overcome the deference to which the state court's ruling on this claim is entitled, and they are also insufficient to rebut the presumption that the state court's findings of fact on this claim are correct. On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

### *v.  failure to develop a relationship of trust with him*

Washington asserts that trial counsel's failure to "develop a relationship of trust with [him] and involve him in the development of a defense theory severely prejudiced [him]." (Doc. 1 at 32).

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed this claim pursuant to Ala. R. Crim. P. 32.6(b), stating:  "This ground fails pursuant to Rule 32.6(b) because it does not contain a clear and specific statement of facts that would entitle the Petitioner to relief." (Doc. 20-32 at 46).

In rejecting this claim on appeal, the ACCA noted applicable Supreme Court precedent, as set out below:

> In *Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), the United States Supreme Court stated:
>
>> "No court could possibly guarantee that a defendant will develop . . . rapport with his attorney—privately retained or provided by the public. . . . Accordingly, we reject the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel."

461 U.S. at 13–14.

In relation to this claim, the United States Court of Appeals for the Fifth Circuit has stated:

"Crawford claims that his trial counsel . . . was ineffective because he did not establish a 'relationship of trust' with his client.  Crawford cites no authority for the proposition that a criminal defendant is entitled to a 'meaningful' relationship with counsel or that the denial of such a relationship amounts to ineffective assistance of counsel.  Further, in *Morris v. Slappy*, the Supreme Court explicitly 'reject[ed] the claim that the Sixth Amendment guarantees a "meaningful relationship" between an accused and his counsel.' 461 U.S. 1, 14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).''

*Crawford v. Epps*, 353 Fed. Appx. 977, 990 (5th Cir. 2009) (not reported in F.3d).  . . .

The circuit court correctly found that there was no "material issue of fact or law" that would entitle Washington to relief; therefore, the court correctly dismissed this claim. *See* Rule 32.7(d), Ala. R. Crim. P.

*Washington*, 95 So. 3d at 61–62.

On AEDPA review, the Rule 32 Court's dismissal of this claim is viewed as a decision on the merits. *See, e.g.*, *Borden*, 646 F.3d at 815–16.  In affirming the Rule 32 Court's dismissal, the ACCA explained why the claim was correctly dismissed. Additionally, the ACCA explained that a criminal defendant has no Sixth Amendment right to counsel who develops a relationship of trust with the defendant—in other words, that Washington asserted a claim for which no federal constitutional right exists.

Thus, even if this claim had been pleaded with sufficient specificity to satisfy Ala. R. Crim. P. 32.6(b), such pleading would not have saved it, because the United States Supreme Court has clearly established that the Sixth Amendment does not guarantee a meaningful relationship between a criminal defendant and his counsel, *see Morris v. Slappy*, 461 U.S. 1, 14 (1983). The ACCA's decision was consistent with Supreme Court precedent and thus was not unreasonable. *See* 28 U.S.C. § 2254(d)–(e); *Strickland*, 466 U.S. at 694.

In sum, Washington's submissions are insufficient to overcome the deference to which the state court's ruling on this claim is entitled, and they are also insufficient to rebut the presumption that the state court's findings of fact on this claim are correct. On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

### vi.  failure to move for a change of venue

Washington also contends that trial counsel's failure to move for a change of venue resulted in the denial of his right to a fair and impartial trial because of prejudicial pretrial publicity. (Doc. 20-12 at 44-45).

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed this claim, pursuant to Ala. R. Crim. P. 32.6(b), as explained below:

> This ground fails pursuant to Rule 32.6(b) because it does not contain a clear and specific statement of facts that would entitle the Petitioner to relief. Nowhere in the Petition is there an allegation of particular media coverage that rendered Elmore County an unfair venue. Nowhere in the Petition is a juror named who was unable to give Mr. Washington a fair trial. Petitioner is not entitled to relief without a specific and full disclosure of the factual basis for the grounds.

(Doc. 20-32 at 47).

In affirming, the ACCA noted that it had recently rejected a similar IAC claim for failure to move for a change of venue in *Moody v. State*, 95 So. 3d 827, 845 (Ala. Crim. App. 2012).  The ACCA then stated:

> The same is true in this case.  Washington pleaded no facts to show that the publicity had saturated the community, nor did he name any juror who had read or heard about the case.  Washington failed to plead full facts in support of this claim; therefore, summary dismissal was proper.
>
> Moreover, the record shows that counsel moved that juror questionnaires be completed in this case and moved that the jury be sequestered during trial.  Although counsel did not move for a change of venue, the "[d]ecision not to request change of venue is not ineffective assistance of counsel, but is rather a matter of trial strategy."  *Cox v. State*, 660 So.2d 233, 235 (Ala. Crim. App. 1994).  *See also Huls v. State*, 301 Ark. 572, 580, 785 S.W.2d 467, 471 (1990) ("The decision of whether to seek a change of venue is largely a matter of trial strategy and therefore not an issue to be debated under our post-conviction rule."); *Wilson v. State*, 286 Ga. 141, 143, 686 S.E.2d 104, 107 (2009) ("'[T]he decision whether . . . to file . . . a motion for change of venue, as with other motions, is a matter of trial strategy or tactics. . . .'"); *People v. Aspy*, 292 Mich. App. 36, 808 N.W.2d 569 (2011) ("'The decision whether or not to move for a change of venue constitutes a matter of trial strategy.'"); *Brawner v. State*, 947 So. 2d 254, 262 (Miss. 2006) ("This Court has held that defense counsel is under no duty to attempt to transfer venue; therefore, the decision not to seek a change of venue would fall within the realm of trial strategy.").
>
> The circuit court did not abuse its discretion in dismissing this claim based on the deficient pleadings.

*Washington*, 95 So. 3d at 62–63.

The Rule 32 Court and the ACCA both rendered reasoned decisions on this IAC claim.  After oral argument, the Rule 32 Court found that it failed for lack of specificity,

as required by  Ala. R. Crim P. 32.6(b), and dismissed it.  Under AEDPA, the state court's dismissal of this claim is considered a decision on the merits. *See, e.g.*, *Borden*, 646 F.3d at 815–16.

In this action, Washington claims that trial counsel should have moved for a change of venue "to a jurisdiction where the jury pool would have been made up of prospective jurors who were not already biased by exposure to coverage and discussion of the case." (Doc. 1 at 33, para. 87).  Washington's submissions are insufficient to support a finding that the ACCA's disposition of this ineffective assistance of counsel claim was unreasonable under AEDPA.  It was reasonable for the ACCA to conclude that Washington failed to plead sufficient facts in support of this claim, given the minimal and conclusory allegations about extensive media coverage and substantial word-of-mouth discussion in the community where the murders occurred.  Further, Washington has not met his burden to overcome the strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *See Burt*, 571 U.S. at 22–23 (quoting *Strickland*, 466 U.S. at 687, 690).  It follows that he has not overcome the double deference afforded to the ACCA's decision about his trial counsel's performance. *See Pinholster*, 563 U.S. at 190.

Finally, Washington's allegations are insufficient to show that there was "a reasonable probability that the trial court would have, or at least should have, granted a motion for change of venue if [petitioner's] counsel had presented such a motion to the court." *Chandler v. McDonough*, 471 F.3d 1360, 1362 (11th Cir. 2006) (quoting *Meeks v.*

*Moore*, 216 F.3d 951, 961 (11th Cir. 2000)).  Thus, Washington cannot establish that he was prejudiced by trial counsel's failure to move for a change of venue. *See id.*

In sum, Washington's submissions are insufficient to overcome the deference to which the state court's ruling on this claim is entitled, and they are also insufficient to rebut the presumption that the state court's findings of fact on this claim are correct.  On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

### vii.  failure to conduct effective voir dire

Washington also claims that he was denied his right to a fair and impartial trial due to his counsels' failure to conduct effective voir dire and failure to object to the prosecutor's questions during voir dire about the prospective jurors' grandparents. (Doc. 20-12 at 45–46).

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed this claim, pursuant to Ala. R. Crim. P. 32.6(b), as explained below:

> This ground fails pursuant to Rule 32.6(b) because it does not contain a clear and specific statement of facts that would entitle Petitioner to relief.  Petitioner fails to identify which juror or jurors should have been disqualified.  Petitioner fails to describe in particular how much more individual jurors should have been asked, and how that would entitle Petitioner to relief.
> Petitioner fails to take into account any strategic decisions involved in striking the jury in general, and thus this claim also fails under Rule 32.7(d) because no material issue of fact or law exists which would entitle Petitioner to relief and no purpose would be served by further proceedings.  This claim is insufficient to render Mr. Purdue's [sic] or Mr. James' decisions outside the range of reasonable professional judgment, or to constitute an error so serious that Mr. Washington's sixth amendment rights were violated.

(Doc. 20-32 at 47).

In affirming, the ACCA stated:

> The circuit court correctly summarily dismissed this claim because Washington failed to identify specific jurors by name; he failed to plead what should have been done during voir dire examination; and he failed to plead how he was prejudiced by counsel's performance during the voir dire examination. See Rule 32.6(b), Ala. R. Crim. P.
>
> Moreover,
>
> "Generally, '[a]n attorney's actions during voir dire are considered to be matters of trial strategy,' which 'cannot be the basis' of an ineffective assistance claim 'unless counsel's decision is . . . so ill chosen that it permeates the entire trial with obvious unfairness.'"
>
> *Neill v. Gibson*, 263 F.3d 1184, 1193 (10th Cir. 2001) (quoting *Nguyen v. Reynolds*, 131 F.3d 1340, 1349 (10th Cir. 1997)). "Counsel, like the trial court, is granted 'particular deference' when conducting voir dire." *Keith v. Mitchell*, 455 F.3d 662, 676 (6th Cir. 2006).
>
> The circuit court did not abuse its discretion in summarily dismissing this claim based on Washington's deficient pleadings.

*Washington*, 95 So. 3d at 64.

The Rule 32 Court and the ACCA both rendered reasoned decisions on this claim. After hearing oral argument, the Rule 32 Court found that it failed for lack of specificity, as required by Ala. R. Crim P. 32.6(b), and also failed under Ala. R. Crim P. 32.7(d) because no material issue of fact or law exists that would entitle Petitioner to relief, and no purpose would be served by further proceedings. For these reasons, the claim was summarily dismissed. Under AEDPA, this Court reviews the state court's dismissal as a decision on the merits. *See, e.g.*, *Borden*, 646 F.3d at 815–16.

Washington has not shown that the ACCA unreasonably decided this claim.  He claims that trial counsels' voir dire was ineffective and "failed to root out potential bias or prejudice." (Doc. 1 at 33, para. 89).  However, he pleads insufficient facts to establish that counsels' voir dire was ineffective because he fails to specify the additional questions counsel should have asked, which jurors should have been disqualified from his jury, or what objections his counsel should have made to the prosecutor's questions to the prospective jurors about their grandparents.  Washington has not met his burden to overcome the strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *See Burt*, 571 U.S. at 22–23 (quoting *Strickland*, 466 U.S. at 687, 690).  It follows that he has not overcome the double deference afforded to the ACCA's decision about counsel's performance. *See Pinholster*, 563 U.S. at 190.

Further, it was reasonable for the ACCA to conclude that Washington failed to show prejudice.  Similar to his state court petition, his federal habeas petition amounts to little more than conclusory allegations that, if trial counsel had asked unspecified additional questions during voir dire, then *potential* bias would have been revealed.  Washington has not shown that the ACCA's decision was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or that the decision was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

In sum, Washington's submissions are insufficient to overcome the deference to which the state court's ruling on this claim is entitled, and they are also insufficient to rebut

the presumption that the state court's findings of fact on this claim are correct.  On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

*viii.  failure to procure necessary expert witnesses*

Washington also argues that trial counsel were ineffective because they failed to procure expert witnesses in DNA, psychology, drug addiction, and eyewitness identification.

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed it,[11] pursuant to Ala. R. Crim. P. 32.6(b), as explained below:

> The claims that call for an expert witness in DNA, psychology, and drug addiction fail pursuant to Rule 32.6(b) for lack of specificity.  The claims do not contain a full disclosure of the factual basis of the grounds regarding any DNA, psychology, or drug addiction expert or what exactly his/her testimony would be that would entitle Petitioner to relief.
> The claim that calls for an eyewitness expert fails under Rule 32.7(d) because no material issue of fact or law exists that would entitle Petitioner to relief, and no purpose would be served by further proceedings.  The eyewitness in this case, Ms. Childree, did not identify Mr. Washington in her testimony.

(Doc. 20-32 at 47–48).

In affirming, the ACCA stated:

> The circuit court correctly found that this claim was insufficiently pleaded because Washington failed to plead the identity of experts or the content of those experts' testimony.  *See McNabb v. State*, 991 So. 2d 313 (Ala. Crim. App. 2007);

---

[11] Even so, the Rule 32 Court essentially permitted this claim to proceed with respect to potential mitigation evidence Washington argued his trial counsel should have obtained and presented during the penalty phase of trial.  Washington presented evidence from his mental health expert at the evidentiary hearing the Rule 32 Court conducted in December 2007.

> *Woods v. State*, 957 So. 2d 492 (Ala. Crim. App. 2004), *rev'd on other grounds*, 957 So. 2d 533 (Ala. 2006).
>
>     Moreover, the trial record shows that trial counsel did move for a DNA expert. (Trial record, C.R. 107.) The circuit court granted this motion and appointed an independent DNA expert. (Trial record, C.R. 139.) Also, counsel moved that Washington be mentally evaluated before trial. That motion was granted, and Washington was evaluated. Counsel also retained the services of an independent psychologist when counsel asked and received funds to hire Dr. Karen Salekin. Also, no individual specifically identified Washington as the person near the victims' home. The eyewitness merely said that she saw a man between 50 and 60 wearing a dark hat and driving an old truck near the victims' home on the night they were murdered; therefore, no eyewitness expert was necessary.
>
>     The circuit court did not abuse is discretion in summarily dismissing this claim.

*Washington*, 95 So. 3d at 64–65.

The Rule 32 Court and the ACCA both rendered decisions on the merits of this IAC claim. AEDPA review applies to this claim.

Washington fails to show that the ACCA's decision was unreasonable. Washington's petition amounts to little more than vague, conclusory assertions that, if trial counsel had procured an unnamed DNA expert to conduct independent DNA testing, this expert "would have been able to challenge the prosecution's theories about the available DNA samples." (Doc. 1 at 35, para. 96). Washington does not identify the name of a DNA expert who would have testified at trial, or what testimony the expert would or could have proffered to challenge the prosecution's theories. Moreover, Washington fails to show that the ACCA unreasonably found that trial counsel *had* moved for a DNA expert and that the trial court appointed an independent DNA expert. Additionally, Washington's claim that the unnamed DNA expert "would have been able to challenge the prosecution's theories

about the available DNA samples" is speculative, conclusory, and insufficient to show prejudice—i.e., a reasonable probability of a different outcome at the guilt phase. *See Duran v. Walker*, 223 F. App'x 865, 875 (11th Cir. 2007) (per curiam).[12]

Washington also claims that his counsel rendered ineffective assistance because they failed to retain an expert to conduct a psychological evaluation of Washington to evaluate whether he suffered from a mental disease or defect which would negate his culpability for intentional murder.  For the reasons explained above in Part VI.A.1.a.iii, the Court finds this argument unavailing.[13]

Washington's claim with respect to an eyewitness expert fares no better.  The state court explained that a prosecution witness, Ms. Childree, described the person she saw the night of the murders, but she did not identify Washington as that person.  Because Ms. Childree did not identify Washington, the state court reasoned that an eyewitness expert was not necessary.  Washington has not rebutted the presumption of correctness afforded to the state court's factual determinations or otherwise shown that the ACCA's decision was based on an unreasonable determination of the facts. *See* 28 U.S.C. §2254(d)(2), (e)(1). Finally, Washington has not carried his burden to establish a reasonable probability of a different outcome at trial had counsel procured an eyewitness expert.

---

[12]   Here, and elsewhere in this Opinion, the Court cites nonbinding authority.  While the Court acknowledges that these cases are nonprecedential, the Court finds them persuasive.

[13]   At the Rule 32 court's evidentiary hearing in December 2007, Washington presented evidence from Dr. Karen Salekin, the psychologist who his counsel hired as a mitigation expert, and from Dr. Robert Shaffer, the psychologist who opined that Washington had a brain impairment.  The Court will address this evidence when considering Washington's claims that his counsel were ineffective at the penalty phase.

In sum, Washington's submissions are insufficient to overcome the deference to which the state court's ruling on this claim is entitled, and they are also insufficient to rebut the presumption that the state court's findings of fact on this claim are correct. On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

### b.  Washington's claim that trial counsel rendered inadequate representation during trial

Washington also claims that his trial counsel performed deficiently during trial in that they (1) failed to make an adequate opening statement; (2) failed to challenge the State's investigation, theory, and presentation of evidence; (3) failed to present evidence on his behalf, much less a coherent defense theory; (4) failed to object to repeated instances of prosecutorial misconduct; and (5) failed to object to the improper admission of photographs and a crime scene videotape that served only to inflame and prejudice the jury. (Doc. 1 at 38–44). Each subclaim is addressed in turn.

### i.  failure to make an adequate opening statement

Washington claims that trial counsel's opening statement was constitutionally inadequate because it was cursory, short, and did not present a coherent defense theory.

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed this claim, pursuant to Ala. R. Crim. P. 32.6(b), for the reasons stated below:

> This ground fails pursuant to Rule 32.6(b) because it does not contain a clear and specific statement of the grounds upon which relief is sought, nor does it include a full disclosure of the factual basis of those grounds. There is no allegation of exactly what defense theory Mr. Purdue [sic] should have put forth that would have been "coherent."
> Petitioner fails to take into account any strategic decisions involved in developing his opening statement, and

thus this claim also fails under Rule 32.7(d) because no material issue of fact or law exists which would entitle Petitioner to relief, and no purpose would be served by further proceedings.  This claim is insufficient to render Mr. Purdue's [sic] decisions outside the range of reasonable professional judgment or to constitute an error so serious that Mr. Washington's sixth amendment rights were violated.

(Doc. 20-32 at 48).

On appeal, the ACCA affirmed, explaining:

Washington failed to plead sufficient facts in regard to this claim.  He failed to identify any alleged errors that resulted in his counsel's performance being deficient.  Nor did he plead what counsel should have done to be effective.  Washington failed to satisfy the full-fact-pleading requirements of Rule 32.2(b), Ala. R. Crim. P.

Also, "[t]he length of the opening statement is not of itself dispositive of either prong of the *Strickland* test, and there is no constitutional rule that counsel must employ any particular rhetorical technique in the opening statement." *Cirincione v. State,* 119 Md.App. 471, 498, 705 A.2d 96, 108 (1998).

The circuit court did not abuse its discretion in summarily dismissing this claim.

*Washington*, 95 So. 3d at 65.

The Rule 32 Court and the ACCA both rendered reasoned decisions on this IAC claim.  AEDPA review applies to this claim.

Washington has not shown that the state court unreasonably decided this claim.  The state court determined that Washington failed to plead this claim with sufficient specificity, including failing to plead what defense theory counsel should have put forth that would have been "coherent."   Washington's federal habeas petition also lacks adequate allegations about what "coherent" defense theory his counsel should have presented.  His

allegations also are plainly insufficient to overcome the double deference to which the state court's deficient performance determination is entitled. *See Pinholster*, 563 U.S. at 190. Moreover, even if counsel's opening statement amounted to deficient performance, Washington has not shown prejudice.  Considering the entire record, particularly the substantial evidence of guilt, Washington has not shown a reasonable probability that a different opening statement would have impacted the jury's guilty verdict. *See Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694.

In sum, Washington has not shown that the ACCA's decision was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or that the decision was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). He also has not overcome the presumption of correctness to which the state court's factual determinations are entitled. *See id.* § 2254(e)(1).  On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

> ### ii.  failure to challenge the State's investigation, theory, and presentation of evidence

In this claim, Washington cites multiple instances in which, according to him, trial counsel was constitutionally ineffective during trial:  failure to properly challenge the State's investigation and presentation of its case; failure to adequately cross-examine witnesses; failure to object to irrelevant and prejudicial evidence, including photographic and video evidence depicting the victims; failure to object to improper and prejudicial statements during the prosecution's closing arguments; and failure to challenge the State's expert testimony.

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed this claim, pursuant to various provisions of Alabama Rule of Criminal Procedure 32, for the reasons stated below:

> The ground[s] in this section regarding videotaped evidence and crime scene photos are procedurally barred pursuant to Rule 32.2(5) because the claim could have been raised on appeal.
>
> The claims also fail pursuant to Rule 32.6(b) because the claim does not contain a clear and specific statement of the grounds upon which relief is sought, nor does it include a full disclosure of the factual basis of those grounds.
>
> The grounds in this section regarding the introduction of a photograph of the McKinnons fails pursuant to Rule 32.6(b) for failure to state a clear and specific statement of the grounds upon which relief is sought, and does not include a full disclosure of the factual basis of those grounds.  Even if Mr. Washington's counsel had challenged the introduction of this photo, there is no reasonable probability that the outcome of the case would be different.  Therefore, this claim also fails under Rule 32.7(d) because no material issue of fact or law exists that would entitle the Petitioner to relief, and no purpose would be served by further proceedings.
>
> The ground in this section regarding claims that relate to the testimony of Barry Burnett lack specificity under Rule 32.6(b), and are also without merit under Rule 32.7(d). Petitioner fails to specifically demonstrate how this line of questioning was improper or how the act of limiting access to crime scenes was improper.  Petitioner also fails to specifically state how any objection to these questions would have altered the outcome of the trial.  Further, an attorney cannot [be] said to be ineffective for failure to make frivolous objections.
>
> The ground regarding the cross examination of State witnesses fails under Rule 32.6(b) for failure to state a clear and specific statement of the grounds upon which relief is sought, and does not include a full disclosure of the factual basis of those grounds.  Likewise, Petitioner's claims that relate to statements made during State's closing argument and DNA evidence fail for a lack of specificity under Rule 32.6(b).
>
> The ground regarding a failure of defense counsel to argue that the State had presented no evidence of intent fails

> pursuant to Rule 32.7(d). No material issue of fact or law exists
> which would entitle Petitioner to relief, and no purpose would
> be served by further proceedings. In addition, this claim fails
> under Rule 32.6(b) because Petitioner failed to plead any
> specific facts to support his claim, and he did not indicate how
> counsel should have effectively argued a lack of intent, and
> how that argument would have resulted in a different outcome
> for the Petitioner.

(Doc. 20-32 at 49–50).

On appeal, the ACCA affirmed, explaining:

> Moreover, "effectiveness of counsel does not lend itself
> to measurement by picking through the transcript and counting
> the places where objections might be made. Effectiveness of
> counsel is not measured by whether counsel objected to every
> question and moved to strike every answer." *Brooks v. State,*
> 456 So.2d 1142, 1145 Ala. Crim. App. 1984). "'[D]ecisions
> of when and how to raise objections are generally matters of
> trial strategy.'" *Daniels v. State,* 296 Ga. App. 795, 800, 676
> S.E.2d 13, 19 (2009) (quoting *Holmes v. State,* 271 Ga. App.
> 122, 124, 608 S.E.2d 726, 729 (2004)).
> The circuit court did not abuse its discretion in
> summarily dismissing this claim.

*Washington*, 95 So. 3d at 66.

The Rule 32 Court and the ACCA both rendered reasoned decisions on this IAC

claim, and AEDPA review applies.

Washington has not established entitlement to federal habeas relief on this claim.

The state court determined that Washington failed to plead much of this claim with

sufficient specificity. His federal habeas petition similarly lacks specific allegations in

support of this claim, and it is insufficient to overcome the double deference to which the

state court's deficient performance determination is entitled. *See Pinholster*, 563 U.S. at

190. Moreover, even if counsel's alleged errors amounted to deficient performance,

Washington has not shown that the state court unreasonably determined he had not shown prejudice. *See Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694.

In sum, Washington's submissions are insufficient to overcome the deference to which the state court's ruling on this claim is entitled, and they are also insufficient to rebut the presumption that the state court's factual findings are correct.  On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

### iii.  failure to present evidence or a coherent defense theory

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed this claim, under two provisions of Alabama Rule of Criminal Procedure 32, for the reasons stated below:

> This ground fails pursuant to Rule 32.6(b) for failure to state a clear and specific statement of the grounds upon which relief is sought, nor does it include a full disclosure of the factual basis of those grounds.  Nowhere in the petition is there an allegation of exactly what Mr. Purdue [sic] or Mr. James should have presented as a "coherent" defense theory.  Mr. Purdue [sic] and Mr. James are not required nor are they encouraged to fabricate theories on behalf of their client.
>
> . . .
>
> There is not a full factual disclosure of exactly what defense counsel should have challenged that would have entitled Mr. Washington to an acquittal.  Therefore, this ground also fails under Rule 32.7(d) because no material issue of fact or law exists that would entitle the Petitioner to relief, and no purpose would be served by further proceedings.

(Doc. 20-32 at 50–51).[14]

On appeal, the ACCA affirmed, explaining:

> We agree with the circuit court that Washington failed to plead sufficient facts to satisfy the pleading requirements. Washington failed to identify what defense theory counsel should have presented to the jury.  Thus, Washington failed to plead full facts that would entitle him to relief, and summary dismissal was proper.

*Washington*, 95 So. 3d at 67.

The Rule 32 Court and the ACCA both rendered reasoned decisions on this IAC claim, and AEDPA review applies.

Washington has not shown that the state court unreasonably decided this claim.  The state court determined that Washington failed to plead this claim with sufficient specificity, and his federal habeas petition similarly lacks specific allegations in support of this claim. As in state court, he does not sufficiently allege what defense theory his counsel should have pursued, or what alternative theory or motive for the crime counsel should have presented to the jury.  Washington's submissions are insufficient to overcome the double deference to which the state court's deficient performance determination is entitled. *See Pinholster*, 563 U.S. at 190.  Moreover, even if counsel's alleged shortcomings amounted to deficient performance, Washington has not shown that the state court's prejudice determination was unreasonable. *See Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694.

---

[14]  In his Rule 32 Petition, Washington claimed that his counsel failed to limit their caseloads so that they could provide him with "high quality legal representation." (Doc. 20-12 at 56).  He also claimed that counsel was ineffective for "not challenging the State's lack of direct evidence that could link him to the crimes and for their failure to emphasize that the State presented no eyewitness to the crime and no confession from him. (*Id.*).  Washington omitted these arguments from his federal habeas petition. (*See* doc. 1 at 41–42).

In sum, Washington has not shown that the ACCA's decision was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or that the decision was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). He also has not overcome the presumption of correctness to which the state court's factual findings are entitled. *See id.* § 2254(e)(1).  On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

> ### iv.  failure to object to repeated instances of prosecutorial misconduct

Washington also claims that his trial counsel were ineffective because they failed to object to multiple instances of alleged prosecutorial misconduct, including the prosecution's allegedly improper and prejudicial remarks throughout the trial and misstating the law during its closing arguments.

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed this claim, stating:

> This ground fails pursuant to Rule 32.6(b) for failure to state a clear and specific statement of the grounds upon which relief is sought, and because it does not include a full disclosure of the factual basis of those grounds.  This ground merely states broad allegations with no specific statements or incidents of conduct by the prosecutor.  There are also no grounds stated that would entitle Mr. Washington to relief.

(Doc. 20-32 at 51).

On appeal, the ACCA reviewed the Rule 32 Court's foregoing statements for the dismissal of this claim and affirmed, explaining:

> Washington failed to plead what specific instances of prosecutorial misconduct his counsel failed to object to at trial.

> "'Conclusions unsupported by specific facts will not satisfy the
> requirements of Rule 32.3 and Rule 32.6(b).  The full factual
> basis must be included in the petition itself.'"  *Lee v. State,* 44
> So.3d 1145, 1153 (Ala. Crim. App. 2009) (quoting *Hyde v.
> State,* 950 So.2d 344, 356 (Ala. Crim. App. 2006)).  Summary
> dismissal of this claim was proper.

*Washington*, 95 So. 3d at 67.

The Rule 32 Court and the ACCA both rendered reasoned decisions on this IAC claim, and AEDPA review applies.

Washington has not shown that the state court unreasonably decided this claim.  The state court determined that Washington failed to plead this claim with sufficient specificity, and his federal habeas petition similarly lacks specific allegations in support of this claim. As in state court, he does not sufficiently allege the specific instances of prosecutorial misconduct to which his counsel failed to object at trial.  Washington's submissions are insufficient to overcome the double deference to which the state court's deficient performance determination is entitled. *See Pinholster*, 563 U.S. at 190.  Moreover, even if counsel's alleged errors amounted to deficient performance, Washington has not shown prejudice, especially considering the substantial evidence of guilt presented at trial. *See Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694.

In sum, Washington has not overcome the deference to which the state court's ruling on this claim is entitled, and he has not rebutted the presumption that the state court's findings of fact on this claim are correct.  On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

> *v. failure to object to the improper admission of photographs and a crime scene videotape that served only to inflame and prejudice the jury*

Washington also claims that trial counsel were ineffective because they failed to object to the admission of photographs and crime scene video which Washington contends were prejudicial.

Following oral argument on the State's motion to dismiss, the  Rule 32 Court dismissed this claim, pursuant to various provisions of Alabama Rule of Criminal Procedure 32, for the reasons stated below:

> The ground[s] in this section regarding videotaped evidence and crime scene photos are procedurally barred pursuant to Rule 32.2(5) because the claim could have been raised on appeal.
>
> The claims also fail pursuant to Rule 32.6(b) because the claim does not contain a clear and specific statement of the grounds upon which relief is sought, nor does it include a full disclosure of the factual basis of those grounds.
>
> The grounds in this section regarding the introduction of a photograph of the McKinnons fails pursuant to Rule 32.6(b) for failure to state a clear and specific statement of the grounds upon which relief is sought, and does not include a full disclosure of the factual basis of those grounds.  Even if Mr. Washington's counsel had challenged the introduction of this photo, there is no reasonable probability that the outcome of the case would be different.  Therefore, this claim also fails under Rule 32.7(d) because no material issue of fact or law exists that would entitle the Petitioner to relief, and no purpose would be served by further proceedings.

(Doc. 20-32 at 49).

On appeal, the ACCA affirmed, explaining:

> The crime scene photographs and the victims' anniversary photograph were admissible. *See Brooks v. State,* 973 So.2d 380 (Ala.Crim.App.2007).  Counsel was not

ineffective for failing to object to the admission of photographs. Moreover, "[i]solated failures to object are typically not sufficient grounds for a finding of ineffective assistance." *Nadal v. State,* 348 S.W.3d 304, 321 (Tex.App.2011).

. . .

   The circuit court did not abuse its discretion in summarily dismissing this claim.

*Washington*, 95 So. 3d at 65–66.

  The Rule 32 Court and the ACCA both rendered reasoned decisions on this IAC claim, and AEDPA review applies.

  Washington has not shown that the state court unreasonably determined that he was not entitled to relief on this claim. First, he has not shown that the state court unreasonably concluded that the crime scene photographs and the victims' anniversary photograph were admissible. And it cannot be said that trial counsel rendered deficient performance for failing to make a meritless objection. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001). Although Washington disagrees with the state court's conclusion, he fails to establish that the state court's decision was "so obviously wrong as to be 'beyond any possibility for fairminded disagreement.'" *See Shinn v. Kayer*, 592 U.S. 111, 124 (2020) (quoting *Harrington*, 562 U.S. at 103).

  Moreover, even if counsel's failure to object to the admission of the photographs and video evidence amounted to deficient performance, Washington has not shown prejudice, let alone that the state court's prejudice determination was unreasonable. Considering the entire record, especially the substantial evidence of guilt presented at trial,

Washington fails to establish a reasonable probability that the jury's guilty verdict would have been different if the photographs and video evidence had not been admitted. *See Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694.

In sum, Washington has not overcome the deference to which the state court's ruling on this claim is entitled, and he has not rebutted the presumption that the state court's findings of fact on this claim are correct.  On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

### c.  Washington's claim that he was prejudiced by the cumulative effect of counsel's performance at guilt phase

Washington also claims that, when trial counsel's alleged errors at the guilt phase are viewed in combination, he was denied the right to effective assistance of counsel in violation of the United States Constitution.  He contends that, but for trial counsel's deficient performance, he would not have been convicted of capital murder and sentenced to death. (Doc. 1 at 44).

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed this claim, stating:

> This ground fails pursuant to Rule 32.6(b) for failure to state a clear and specific statement of the grounds upon which relief is sought, and does not include a full disclosure of the factual basis of those grounds.  This ground merely states conclusions of law and is insufficient to warrant any further proceedings.  Further, this ground is due to be dismissed under Rule 32.7(d) because it is without merit, and no purpose would be served by any further proceedings.

(Doc. 20-32 at 51).

On appeal, Washington claimed that the circuit court should have considered his IAC claims "as a whole and not in a piecemeal fashion when determining whether those claims were due to be summarily dismissed." *Washington*, 95 So. 3d at 58. The ACCA rejected this claim pointing out that:

> . . . "[T]he claim of ineffective assistance of counsel is a general allegation that often consists of numerous specific subcategories. Each subcategory is an independent claim that must be sufficiently pleaded." *Coral v. State,* 900 So.2d 1274, 1284 (Ala. Crim. App. 2004), *overruled on other grounds, Ex parte Jenkins,* 972 So.2d 159 (Ala.2005).
> When considering whether the claims of ineffective assistance of counsel were sufficiently pleaded, the circuit court correctly considered each claim individually.

*Id.*

The Rule 32 Court and the ACCA both rendered reasoned decisions on this IAC claim, and AEDPA review applies.

It was not unreasonable for the ACCA to conclude that Washington's cumulative error claim lacked merit. In assessing claims of cumulative error, the Eleventh Circuit instructs courts to first consider "the validity of each claim individually, and then examin[e] any errors . . . in the aggregate and in light of the trial as a whole to determine whether the [petitioner] was afforded a fundamentally fair trial." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). As explained above, none of Washington's individual claims of error or prejudice at the guilt phase entitle him to relief, and therefore this Court has "nothing to accumulate." *See id.* Consequently, Washington's cumulative error argument fails. *See id.*

In sum, Washington's submissions are insufficient to overcome the deference to which the state court's ruling on this claim is entitled, and they are also insufficient to rebut the presumption that the state court's findings of fact on this claim are correct. On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

## 2. Washington's IAC Claims Against Trial Counsel at the Penalty Phase

Washington also raised several discrete IAC claims concerning trial counsel's performance at the penalty phase in his Amended Rule 32 Petition and on appeal to the ACCA. With respect to each claim, the Respondents contend that the Rule 32 Court and the ACCA made specific findings of fact, and that in this proceeding, those findings of fact are presumed correct pursuant to 28 U.S.C. § 2254(e)(1). The Respondents also assert that the ACCA rejected these claims on the merits on Washington's appeal from the denial of post-conviction relief in the court below. The Respondents argue that the state court's decisions on these claims were neither contrary to, nor an unreasonable application of, clearly established federal law, and that the state court's decisions were based on reasonable determinations of the facts. Therefore, according to the Respondents, Washington's claims are due to be denied pursuant to 28 U.S.C. § 2254(d).

### a. Washington's claim that trial counsel failed to prepare a mitigation case before the penalty phase and to present a mitigation case at the penalty phase

Washington contends that his trial counsel failed to prepare and present an adequate mitigation case for the penalty phase in Claim II.A. and Claim II.E., respectively. The parties' arguments about, and the state court's disposition of, the mitigation preparation

and presentation claims substantially overlap.  Consequently, the Court addresses these two claims together.

Concerning his claim that trial counsel failed to adequately prepare a mitigation case, Washington asserts that trial counsel failed to interview key fact witnesses, including his family members; and failed to investigate his personal history, including his employment history, educational background, medical history, mental health issues, and other factors necessary to present an adequate mitigation case during the penalty phase. (Doc. 1 at 47).  More particularly, Washington claims that his counsel failed to develop mitigation evidence about (1) his violent and impoverished upbringing (Claim II.A.1); and (2) his mental health, his substance abuse, and his family history of mental illness (Claim II.A.2) (doc. 1 at 51–54).  Similarly, Washington claims that his trial counsel were ineffective because they failed to present the above mitigation evidence at the penalty phase.

Concerning his claim that trial counsel failed to present an adequate mitigation case, Washington argues that trial counsel were ineffective because they failed to called Dr. Salekin, their mitigation investigator, at the penalty phase.  Washington also argues that counsel should have presented, through the testimony of his sisters, his mother, his nephew, and a friend, additional evidence about, among other things:  Washington's abusive and impoverished upbringing, personal tragedies he experienced in his youth, his generous and caring nature, his drug and alcohol use, and his family's history of mental illness. According to Washington, family members would have testified that Washington, who was one of eleven children, grew up in extreme poverty with no indoor plumbing or electricity;

he dropped out of school after the sixth grade and began working to support his family; he experienced the deaths of his father, two brothers, and a close friend; one of his wives had a miscarriage; his stepfather was an alcoholic who cursed at the children, called them names when he drank, and often singled Washington out for abuse, even going so far as to hit Washington in the head with a hatchet; his mother and stepfather inflicted "whuppings" on the children using a belt or a switch if the children failed to do their chores; and several family members, including some of his siblings and his children, suffered from mental illnesses.  Family members and a friend also would have testified about Washington's long history of drug and alcohol use.  Additionally, these witnesses would have testified that Washington had good work habits and always had a job; and that he was a good person who provided financially for his mother, siblings, other relatives, and sometimes even the entire neighborhood.  Washington further argues that his counsel should have presented evidence regarding his purported mental illnesses and diminished IQ.

The Rule 32 Court conducted an evidentiary hearing on these claims. (Doc. 20-25 at 67–114; doc. 20-25 at 182–203; doc. 20-26 at 3–13).  The Rule 32 Court denied the claims for the reasons stated below:

> The Court finds that Petitioner's counsel were not ineffective with regard to the preparation of a mitigation case before the penalty phase.  The facts establish that Mr. James retained Dr. Salekin to prepare a mitigation report.  After reviewing Dr. Salekin's report Mr. James and Mr. Perdue made the tactical and strategic decision not to call her as a witness. If they had called her as a witness, then the jury would have been exposed to information which would have been extremely damaging to Mr. Washington.  Mr. Washington's employment history, educational background and medical history has not revealed a great deal of relevant mitigation evidence.  This is

true, even with the passage of time and the expenditure of substantial resources on his behalf by his new attorneys. Mr. Perdue placed before the jury evidence of Washington's positive employment history and his love and concern for members of his family. Further, even though there might have been additional family members who could have testified to these same things during the penalty phase of Washington's trial, these witnesses were either not revealed to defense counsel by Mr. Washington or those witnesses had ample opportunity to come forward and offer their testimony but, for whatever reason, declined to do so.

. . . .

The Court finds that trial counsel did not fail to present readily available mitigation evidence to the jury nor were they ineffective in the evidence that they presented. Although Petitioner's counsel argued that trial counsel failed to present a wealth of available mitigation evidence, the facts and testimony did not bear this out. Testimony from other family members, in addition to those family members who were called to testify, would only have been cumulative to what those who testified had to say.

The fact, if it be a fact, that the Petitioner has family members who suffer from mental illness, has no relationship to the conduct of Mr. Washington. The fact that Mr. Washington dropped out of school after the sixth grade and went to work in no way justifies the killing of two people. Neither does Mr. Washington's abuse of alcohol and illegal drugs.

If trial counsel had called Mr. Washington's employer, Billy Whitehurst, then the jury would have heard about Mr. Washington making threats to co-employees as well as hearing about his positive ability to work. If trial counsel had called Dr. Salekin to testify, the jury would have heard of the negative things that she discovered as well as the positive. If Dr. Shaffer had offered his opinion to the jury that Mr. Washington suffered from brain impairment, the State could have reasonably called Dr. King or even Dr. Kirkland to testify that he did not.

Even assuming, that trial counsel had found and presented a witness that would have testified at trial in the manner that Dr. Shaffer did at the evidentiary hearing, the Court finds that there is no reasonable probability that the

balance of aggravating and mitigating circumstances that led to the imposition of the death penalty in this case would have been different.  In light of Mr. Washington's brutal attack upon and murder of an elderly couple, whom he worked for for years, the Court finds no reasonable probability that the presentation of such psychological evidence such as presented at Washington's evidentiary hearing would have changed the jury's recommendation.   Further, the presentation of such evidence would not have altered this Court's findings that the aggravating circumstances outweigh the mitigating circumstances.

(Doc. 20-32 at 71–74).

Upon *de novo* review of the record, the ACCA affirmed, explaining in relevant part as follows:

[I]ntroducing more evidence concerning Washington's life would have opened the door to negative evidence.  As noted above, Washington had six children, but he did not maintain contact with them; he had been married three times and had cheated on all three spouses; and he had a long work history but was described as violent at work and had frequently threatened his coworkers.

. . . .

Furthermore, the same judge who presided over Washington's capital-murder trial also considered his postconviction petition.  In the postconviction proceedings, the circuit court found that the allegedly omitted mitigation evidence would not have affected his decision that the aggravating circumstances outweighed the mitigating circumstances and mandated a death sentence. We afford the experienced judge's ruling "considerable weight."  *See State v. Gamble,* 63 So.3d 707, 721  (Ala. Crim. App. 2010).
Moreover, we have conducted our own de novo review and have reweighed the alleged omitted mitigation evidence against the evidence that was presented at Washington's trial and sentencing hearing.  *See Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). . . .    The evidence presented at the postconviction evidentiary hearing was to a

> great extent cumulative of evidence presented on Washington's behalf and was entitled to little weight. We agree with the circuit court that the admission of this evidence would not have changed the verdict in the penalty phase.
>
> Washington has failed to establish that he was prejudiced by the alleged omission of the above mitigating evidence. Thus, Washington has failed to satisfy the *Strickland* test. The circuit court correctly denied this claim.

*Washington*, 95 So. 3d at 52–53. The ACCA also considered, and rejected, Washington's argument that the Rule 32 Court ignored evidence of his family history of mental illness, which Washington submits is a mitigating circumstance. *Id.* at 47–48. The ACCA concluded that the record "d[id] not support Washington's claim" that the Rule 32 Court ignored this evidence; instead, the ACCA explained, the Rule 32 court's findings were based on record evidence, particularly the testimony of Dr. King, the State's expert. *Id.* at 48.

Because the state court adjudicated these claims on the merits, Washington must establish that the ACCA's decisions were either contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or were based on unreasonable determinations of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)–(2).

Washington has not shown that the state court unreasonably determined that he failed to establish prejudice resulting from trial counsel's failure to develop or present additional mitigation evidence.[15] As explained earlier, in assessing *Strickland* prejudice in

---

[15] Because Washington cannot show prejudice, the Court pretermits discussion of whether trial counsel's performance was deficient. *See McKiver*, 991 F.3d at 1365 ("Because both prongs of the [*Strickland*] test must be satisfied, a court need not address one prong if the petitioner cannot satisfy the other.").

the capital sentencing context, "the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695; *Gavin*, 40 F.4th at 1263.  Because the jury recommended a sentence of death by the narrowest possible vote under Alabama law (10–2),[16] Washington "need establish only 'a reasonable probability that at least one juror would have struck a different balance' between life and death." *Gavin*, 40 F.4th at 1267 (quoting *Jenkins v. Comm'r, Ala. Dep't of Corr.*, 963 F.3d 1248, 1270 (11th Cir. 2020)).

In assessing the reasonable probability of a different result, the state court had to determine whether there was a "substantial" likelihood that the outcome would have been different by weighing the aggravating evidence and all the mitigation evidence—both the evidence adduced at trial and during the Rule 32 proceedings. *See Porter*, 558 U.S. at 41; *see also Harrington*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable.").  Thus, the question for the ACCA was whether the nonstatutory mitigation evidence presented in the Rule 32 proceedings, combined with the one statutory mitigating circumstance and the nonstatutory mitigating circumstances found at sentencing, would have outweighed these three aggravating circumstances: (1) Washington committed the murders during the commission of a robbery in the first degree, *see* ALA. CODE § 13A-5-40(a)(2); (2) Washington committed the murders during

---

[16] Under Alabama law at the time of Washington's trial, a jury's recommendation of a death sentence required a vote of at least 10 of the 12 jurors. ALA. CODE § 13A-5-46(f) (1999).

the commission of a burglary in the first degree, *see id.* § 13A-5-40(a)(4); and (3) Washington committed the murders pursuant to one course of conduct, *see id.* § 13A-5-40(a)(10).

As indicated above, the Rule 32 Court found that the new testimony from Washington's other family members would have been cumulative of the testimony already presented by his family members at sentencing. The Rule 32 Court also found that Dr. Shaffer's testimony regarding Washington's brain impairment would have opened the door to testimony from the State's experts that Washington lacked a brain impairment, and that in any event, the mental health evidence was not sufficiently mitigating in light of the aggravating circumstances present. Additionally, the Rule 32 Court considered, and rejected, the mitigation evidence concerning Washington's family background and struggles during his youth as insufficient to justify the murders of two people. In sum, the Rule 32 Court found the new mitigation evidence, considered together with the prior mitigation evidence, not particularly compelling under the circumstances of Washington's case, including because the evidence of aggravating circumstances was strong, much of the mitigation evidence was cumulative, and the State would have challenged Washington's mental health evidence with testimony from its own witnesses. The ACCA agreed that the new mitigation evidence was entitled to little weight and also found that introducing additional evidence about Washington's life would have opened the door to negative evidence. The ACCA concluded, after reviewing the evidence *de novo*, that the admission of the new mitigation evidence would not have changed the outcome at the penalty phase.

As explained further below, it was not unreasonable for the ACCA to conclude there was not a substantial likelihood that the jury would have found that the totality of the mitigating circumstances—the one statutory mitigating circumstance plus the nonstatutory mitigation evidence adduced both at sentencing and the Rule 32 proceedings—outweighed the three statutory aggravating circumstances present in Washington's case.   This conclusion is underscored by the strength of the evidence both of Washington's guilt— particularly the blood DNA evidence—and of the aggravating circumstances found at sentencing. *See Williams*, 529 U.S. at 398 (observing that it is proper for a court, in assessing prejudice, to consider the strength of the evidence supporting an aggravating circumstance); *Anderson v. Sec'y, Fla. Dep't of Corr.*, 752 F.3d 881, 908 (11th Cir. 2014) (explaining that the overwhelming evidence of guilt further supported the holding that the state court did not unreasonably determine that a capital defendant was not prejudiced by trial counsel's failure to present mitigation evidence); *Crawford v. Head*, 311 F.3d 1288, 1321 (11th Cir. 2002).

While the evidence of Washington's difficult childhood due to poverty, abuse, his alcoholic stepfather, and personal tragedies may have been mitigating, it was not unreasonable for the state court to find no reasonable probability that this mitigation evidence would have changed the outcome in light of the aggravated nature of Washington's crimes. *See Crawford*, 311 F.3d at 1322 (reaching a similar conclusion regarding mitigating evidence of the petitioner's alcoholic father and disadvantaged childhood).  Moreover, "[w]hen a defendant is several decades removed from the abuse being offered as mitigation evidence[,] its value is minimal." *Callahan v. Campbell*, 427

F.3d 897, 937 (11th Cir. 2005); *Anderson*, 752 F.3d at 908.  Thus, this Court's conclusion that the state court reasonably found that Washington's difficult childhood was insufficiently mitigating is reinforced by the fact that he was approximately 55 years old at the time of the murders and thus was far removed from his difficult childhood. *See Anderson*, 752 F.3d at 908 (in assessing the reasonableness of the state court's prejudice determination, observing that capital defendant was several decades removed from the childhood sexual abuse offered as mitigation evidence); *Callahan*, 427 F.3d at 937–38 (finding mitigation evidence of a capital defendant's abusive childhood "less than compelling" in part because the defendant was 35 years old when he committed the crime); *Gilreath v. Head*, 234 F.3d 547, 550 n.10 (11th Cir. 2000) (concluding that a capital defendant "clearly was not prejudiced" by trial counsel's failure to present evidence of the defendant's troubled childhood because the defendant was more than 40 years old at the time of the murders).

Additionally, evidence of a capital defendant's substance abuse "often has little mitigating value and can do as much or more harm than good in the eyes of the jury." *Crawford*, 311 F.3d at 1321; *Tompkins v. Moore*, 193 F.3d 1327, 1338 (11th Cir. 1999) (explaining that evidence of drug abuse is a double-edged sword "which can harm a capital defendant as easily as it can help him at sentencing").  Here, especially given the prosecution's theory that Washington murdered the McKinnons to obtain drug money, additional evidence concerning Washington's substance abuse may well have done "as much or more harm than good in the eyes of the jury." *See Crawford*, 311 F.3d at 1321 (finding no prejudice where trial counsel failed to present evidence at the penalty phase

regarding the petitioner's alcohol abuse); *cf. Pietri v. Fla. Dep't of Corr.*, 641 F.3d 1276, 1284 (11th Cir. 2011) (finding no prejudice where trial counsel failed to present a voluntary intoxication defense at the guilt phase because evidence of drug abuse "can be a 'two-edged sword'" (citation omitted)).  Consequently, it was not unreasonable for the state court to assign little mitigating weight to the evidence of Washington's substance abuse— at least some of which had already been presented at sentencing.

The ACCA also reasonably assigned little mitigating value to the new evidence about Washington's life and background.  The ACCA explained that introducing new evidence about Washington's life would have opened the door to additional negative evidence, including evidence that he was an adulterer and did not have contact with any of his six children. *Cf. Darden v. Wainwright*, 477 U.S. 168, 186 (1986) (concluding, in a pre-AEDPA case, that habeas petitioner had not shown deficient performance, and explaining that, if trial counsel had introduced evidence that the petitioner was a family man, counsel would have had to contend with evidence that the petitioner had a girlfriend even though he was still married).  Washington protests that the door to this negative family history evidence was already open due to the testimony from Washington's sisters which trial counsel had elicited at the sentencing hearing.  Washington, however, fails to establish that the ACCA's finding was objectively unreasonable in this regard.

It also was not unreasonable for the state court to find no prejudice occasioned by counsel's failure to procure and present testimony regarding Washington's mental health, such as that offered by Dr. Shaffer, in light of the State's contrary mental health evidence as well as the aggravating circumstances. *See Pinholster*, 563 U.S. at 201 (holding that the

74

state court's prejudice determination was not unreasonable and concluding that the petitioner's new psychiatric report was of "questionable mitigating value" because this evidence "would have opened the door to rebuttal by a state expert"); *Pye*, 50 F.4th at 1050–51 (concluding that the state court's prejudice determination was reasonable where the facts of the crime were inconsistent with the petitioner having serious brain damage and "in light of the aggravating factors"); *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1315 (11th Cir. 2016) (concluding that the state court's prejudice determination was not unreasonable given the "powerful aggravators" and limited mitigating value of the mental health testimony).  Similarly, it was not unreasonable for the state court to conclude that evidence of Washington's family members' mental illnesses "has no relevance to any diagnosis of Mr. Washington." *See Washington*, 95 So. 3d at 47.  As the ACCA explained, the Rule 32 Court based its conclusion on the testimony of Dr. King, the State's expert. Although Washington highlights Dr. Shaffer's and Dr. Salekin's testimony that family members' mental health issues may indicate a subject's mental illness, the mere existence of conflicting evidence, without more, is insufficient to support a finding that the state court's determination of this issue was unreasonable. *See Wood*, 558 U.S. at 301; *cf. Pye*, 50 F.4th at 1052 (concluding that state court did not unreasonably determine that the petitioner was not prejudiced by trial counsel's failure to present additional mental health evidence in part due to the "conflicting evidence about the extent of [the petitioner's] mental-health issues").

Washington's citation to *Payne*, 501 U.S. at 822, does not help him establish that the state court's prejudice determination was unreasonable.  In *Payne*, the Court observed

that "a State cannot preclude the sentencer from considering 'any relevant mitigating evidence' that the defendant proffers in support of a sentence less than death." *See* 501 U.S. at 822.  But the Alabama state courts were not precluded from hearing Washington's mitigation evidence.  Rather, the state courts found the mitigation evidence insufficient to establish a reasonable probability of a different sentence.

Although the ACCA did not expressly articulate all of the foregoing justifications for its prejudice determination, this Court may consider these justifications in determining whether the ACCA's determination was reasonable. *See Pye*, 50 F.4th at 1036 (explaining that federal courts conducting AEDPA review "are not required, in assessing the reasonableness of a state court's reasons for its decision, to strictly limit [their] review to the particular *justifications* that the state court provided" and instead may consider "*any* potential justification for those reasons") (first emphasis in original; second emphasis added; third emphasis omitted)).  Considering the entire record, Washington has failed to show that the state court's decision regarding prejudice is objectively unreasonable. *See Woodford*, 537 U.S. at 27; *Bell*, 535 U.S. at 699 (explaining that "under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly" and that the petitioner instead must show that the state court's decision was objectively unreasonable).

Washington cites *Williams*, 529 U.S. 362 (2000), and *Rompilla v. Beard*, 545 U.S. 374 (2005), in support of his contention that trial counsel rendered ineffective assistance by failing to present adequate mitigating evidence to the jury. (Doc. 32 at 30).  Washington also cites *Wiggins v. Smith*, 539 U.S. 510 (2003), to support his position that trial counsel's

allegedly inadequate investigation into mitigation evidence before trial constitutes ineffective assistance of counsel. But these cases do not help Washington, given the procedural and factual differences between his case and those cases.

First, in *Wiggins*, *Williams*, and *Rompilla*, AEDPA deference did not apply to the prejudice prong. *See Wiggins*, 539 U.S. at 534 (explaining that, because the state court did not reach the prejudice prong, the Court's review was "not circumscribed by a state court conclusion with respect to prejudice"); *Rompilla*, 545 U.S. at 390 (reviewing the prejudice prong *de novo* because the state court "never reached the issue"); *Williams*, 529 U.S. at 395–97 (reviewing a start court decision that failed to apply the correct legal standard); *see also Pinholster*, 563 U.S. at 202 (making this observation about *Rompilla* and *Williams*); *Gavin*, 40 F.4th at 1269 (making this observation about *Wiggins*, *Rompilla*, and *Williams* and rejecting the district court's reliance on those cases). Thus, because the Supreme Court "did not apply AEDPA deference to the question of prejudice in" *Wiggins*, *Rompilla*, or *Williams*, those cases "offer no guidance with respect to whether a state court has *unreasonably* determined that prejudice is lacking"—which is the relevant question in Washington's case. *See Pinholster*, 563 U.S. at 202 (emphasis in original); *accord Gavin*, 40 F.4th at 1269.

*Wiggins* also does not help Washington because the mitigation evidence in *Wiggins* was more compelling than that uncovered in Washington's case. Assessing prejudice under *Strickland* "involves a case-by-case inquiry," and "simply because prejudice was found after considering similar omitted mitigating evidence in one case is not dispositive of whether prejudice necessarily exists in another." *Gavin*, 40 F.4th at 1269. In *Wiggins*,

77

the mitigation evidence included evidence that the petitioner "experienced severe privation and abuse in the first six years of his life while in the custody of his alcoholic, absentee mother." 539 U.S. at 535.  The petitioner's mother frequently left him and his siblings "alone for days, forcing them to beg for food and to eat paint chips and garbage"; and she had sex with men while her children slept in the same bed. *Id.* at 516–17.  On one occasion, she forced the petitioner's hand against a hot stove burner, leading to his hospitalization. *Id.* at 517.  The petitioner was placed in foster care at age six, and he "suffered physical torment, sexual molestation, and repeated rape during his . . . years in foster care." *Id.* at 535.  When he was sixteen, the petitioner ran away from his foster home and lived on the streets. *Id.* at 517.  The Supreme Court, on *de novo* review, concluded that if the jury had heard this "considerable mitigating evidence, there is a reasonable probability that it would have returned with a different sentence." *Id.* at 536.  While Washington's mitigation evidence may show that his upbringing was less than ideal, it does not rise to the level of the horrific childhood experienced by the petitioner in *Wiggins*.  Consequently, *Wiggins* does not help Washington establish a reasonable probability that the jury or trial court judge would have reached a different sentencing result after considering all of the mitigating circumstances and reweighing them against the aggravating circumstances.

Like *Wiggins*, *Rompilla* does not help Washington because the mitigation evidence in *Rompilla* was more compelling than the mitigation evidence revealed in Washington's case.  In *Rompilla*, the evidence uncovered in state habeas showed that the petitioner was subjected to serious physical abuse by his father who beat him with his hands, fists, leather straps, belts, and sticks. 545 U.S. at 392.  The petitioner also witnessed severe and frequent

physical abuse between his parents, including his father frequently beating his mother leaving her "bruised and black-eyed," and "on at least one occasion" his mother stabbing his father. *Id.* The petitioner also experienced extreme parental neglect and mistreatment, including his father locking him and his brother in a small, filthy, excrement-filled wire dog pen. *Id.* "All of the children lived in terror," and "[t]here were no expressions of parental love, affection or approval." *Id.* The petitioner was not allowed to visit other children or talk on the phone, and the children "were not given clothes and attended school in rags." *Id.* Additionally, the petitioner was likely schizophrenic, suffered from organic brain damage, had a "third grade level of cognition," and had an IQ "in the mentally retarded range." *Id.* at 391–93. The petitioner's mother drank during pregnancy, and experts opined that his problems "were likely caused by fetal alcohol syndrome." *Id.* at 392. The Court concluded that "[t]his evidence add[ed] up to a mitigation case that bears no relation to the few naked pleas for mercy actually put before the jury." *Id.* at 393. While the mitigation evidence in this case may demonstrate that Washington did not have a good upbringing, it is a far cry from the horrendous upbringing and background of the petitioner in *Rompilla*. *See Pye*, 50 F.4th at 1056 (reaching a similar conclusion); *Gavin*, 40 F.4th at 1270 (same).

Washington's reliance on *Williams* fares no better. In *Williams*, the Supreme Court found the state court's prejudice determination to be "unreasonable insofar as it failed to evaluate the totality of the available mitigation evidence . . . in reweighing it against the evidence in aggravation." 529 U.S. at 397–98. The jury had found one aggravating circumstance—future dangerousness. *See id.* at 398. The *Williams* Court explained that in

assessing prejudice, the state court "failed to even to mention the sole argument in mitigation that trial counsel did advance"—that the petitioner turned himself in, expressed remorse for his actions, and cooperated with police. *Id.* The Court observed that "extensive records graphically describ[ed] [the petitioner's] nightmarish childhood," including the fact that the petitioner's parents had been "imprisoned for the criminal neglect of [the petitioner] and his siblings, that [the petitioner] had been severely and repeatedly beaten by his father, that he had been committed to the custody of the social services bureau for two years during his parents' incarceration (including one stint in an abusive foster home), and then, after his parents were released from prison, had been returned to his parents' custody." *Id.* at 395 (footnote omitted) (parenthetical in original). The Court concluded that the totality of the mitigation evidence, which also included "the reality that [the petitioner] was 'borderline mentally retarded,'" may have affected the jury's assessment of whether he deserved a death sentence. *Id.* at 398. As explained earlier, while the evidence in this case may show that Washington had a poor upbringing, his background can reasonably be considered less mitigating than that of the petitioner in *Williams*. And unlike the state court in *Williams*, the ACCA in Washington's case did consider his mitigation arguments and evidence, but it found them insufficient to show a reasonable probability of a different sentencing outcome. Consequently, *Williams* does not suggest that the ACCA unreasonably determined that Washington was not prejudiced by counsel's failure to prepare or present additional mitigation evidence.

In sum, both the procedural posture and the balance of aggravating and mitigating circumstances is materially different in Washington's case than in the cases he cites.

Moreover, the Court's independent research has revealed no Supreme Court precedent applying AEDPA deference to a state court's prejudice determination which would compel a different conclusion. *See Gavin*, 40 F.4th at 1270.  Consequently, Washington has failed to show that the ACCA's determination that he failed to establish prejudice was "so obviously wrong as to be 'beyond any possibility for fairminded disagreement.'" *See Shinn*, 592 U.S. at 124 (quoting *Harrington*, 562 U.S. at 103); *see also Pinholster*, 563 U.S. at 188.  Accordingly, Washington is not entitled to federal habeas relief on these claims.

> **b.**   **Washington's claim that trial counsel failed to move for a continuance of the penalty phase**

Washington also claims that trial counsel were ineffective because they did not move for a continuance of the penalty phase, which would have given counsel more time to develop and present a mitigation case.

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed this claim, pursuant Ala. R. Crim. P. 32.7(d), for the reasons stated below:

> This ground fails pursuant to Rule 32.7(d) because no facts are alleged that would entitle Petitioner to relief. Therefore, no purpose would be served by further proceedings. Petitioner fails to allege how not moving for a continuance was serious unprofessional error, nor does he provide any proof that Mr. Purdue [sic] or Mr. James were in fact rushed.  Further, Petitioner fails to show how "but for" counsel's choice not to move for a continuance, the result of the proceedings would be different.

(Doc. 20-32 at 52).

On appeal, the ACCA affirmed, explaining:

> Washington failed to allege how he was prejudiced by
> counsel's failure to seek the three-day continuance or what
> counsel could have done in that limited time.  Washington
> failed to plead prejudice; therefore, summary dismissal was
> proper.  *See Boyd, supra.*

*Washington*, 95 So. 3d at 67–68.

The Rule 32 Court and the ACCA both rendered reasoned decisions on this IAC claim, and AEDPA review applies.

In this action, Washington argues that the ACCA unreasonably determined the facts in affirming the Rule 32 Court's dismissal of this claim.  He contends that, had trial counsel had three additional days to prepare for the penalty phase, they could have formulated a mitigation strategy, uncovered additional mitigation evidence, and better presented a mitigation case.  Upon review of Washington's submissions, the Court finds that he has failed to show that the state court's rejection of this claim on the merits was unreasonable. *See* 28 U.S.C. § 2554(d).  He cites no United States Supreme Court precedent which compels a different result.  And given this Court's conclusion in Part VI.A.2.a. *supra* that the ACCA reasonably determined Washington did not suffer prejudice from trial counsel's failure to investigate or present additional mitigation evidence, it follows that the ACCA reasonably determined that Washington did not suffer prejudice from counsel's failure to request a continuance in order to investigate and present additional mitigation evidence.

In sum, Washington fails to overcome the deference to which the state court's ruling on this claim is entitled, and he fails to rebut the presumption that the state court's findings of fact on this claim are correct.  Consequently, Washington has failed to show that the ACCA's determination that he failed to establish prejudice resulting from trial counsel's

failure to request a continuance was "so obviously wrong as to be 'beyond any possibility for fairminded disagreement.'" *See Shinn*, 592 U.S. at 124 (quoting *Harrington*, 562 U.S. at 103); *see also Pinholster*, 563 U.S. at 188.  Accordingly, Washington is not entitled to federal habeas relief on this claim.

### c.  Washington's claim that trial counsel failed to obtain and present independent expert witnesses at the penalty and judicial sentencing phases of trial

Washington also argues that trial counsel were ineffective because they failed to procure and present expert witnesses—specifically, a social worker, an investigator, and a drug addiction expert—during the penalty and judicial sentencing phases.

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed this claim, stating:

> This ground fails pursuant to Rule 32.6(b) for failure to state a clear and specific statement of the grounds upon which relief is sought, and it does not include a full disclosure of the factual basis of those grounds.  Petitioner fails to allege exactly what mental and emotional problems Mr. Washington actually suffered from, and how his alleged mental health issues would have been explained to the jury by this expert.  Further, Petitioner correctly notes that Mr. Purdue [sic] did argue some mitigating factors to the jury.  Petitioner, however, fails to link the absence of expert testimony regarding these issues to any meritorious claim that would have affected the outcome in this case.  Therefore, this ground is due to be dismissed pursuant to Rule 32.7(d) as well.  No purpose would be served by any further proceedings.

(Doc. 20-32 at 52–53).[17]

---

[17]  Although it appears that the Rule 32 Court summarily dismissed this claim, the Rule 32 Court permitted the portion of this claim pertaining to mental health experts at the penalty phase to proceed to the evidentiary hearing in December 2007.  That portion of the claim is addressed *supra* in Part VI.A.2.a.

On appeal, the ACCA concluded that regardless of Washington's mental health expert evidence, the claim has no merit.  The ACCA reasoned as follows:

> Washington next argues that the circuit court erred in summarily dismissing his claim that counsel was ineffective for failing to obtain experts to testify at the penalty phase.
> As the State asserts in brief, the circuit court allowed Washington to amend his petition in regard to this claim and evidence was presented concerning this claim at the evidentiary hearing.  This claim is not supported by the record.

*Washington*, 95 So. 3d at 68.

The state courts decided this claim on the merits, and AEDPA review applies.

Washington fails to show that the ACCA's decision was unreasonable or contrary to clearly established Supreme Court precedent.  Washington claims that a social worker, an investigator, and a drug addiction expert would have uncovered, and allowed trial counsel to present, additional mitigating evidence at the penalty and sentencing phases. Given this Court's conclusion in Part VI.A.2.a. *supra* that the ACCA reasonably found no prejudice resulting from trial counsel's failure to present additional mitigation evidence, it follows that the ACCA reasonably determined that Washington did not suffer prejudice from counsel's failure to procure and present expert witnesses to uncover and help present additional mitigation evidence.

In sum, Washington's submissions are insufficient to overcome the deference to which the state court's ruling on this claim is entitled, and they are also insufficient to rebut the presumption that the state court's findings of fact on this claim are correct.  On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

### d. Washington's claim that trial counsel was inadequate in giving a cursory and inaccurate opening presentation to the jury before the penalty phase

Washington also claims that trial counsel were ineffective because they gave a cursory and inadequate opening statement before the penalty phase.

The Rule 32 Court heard this claim at the evidentiary hearing on December 11–12, 2007. Subsequently, on March 26, 2008, the Rule 32 Court denied this claim, finding it to be without merit, for the reasons stated below:

> The Court finds that Mr. Washington's trial counsel was not inadequate nor ineffective with regard to the opening statement made before the jury in the sentencing phase of this trial. This Court will not second guess strategic decisions made by experienced trial counsel. Just because an opening statement is not long or rambling does not make it ineffective. Mr. Perdue urged the jury to consider whether it was necessary to take the life of another person when two lives had already been taken. He reminded the jury that Mr. Washington had no lengthy criminal history. He reminded the jury that the Petitioner had a long work history. He also presented to them his position that it was the cocaine and not Mr. Washington's nature that caused the death of the McKinnons.

(Doc. 20-32 at 72).

On appeal, the ACCA reviewed in detail the testimony from the evidentiary hearing on December 11–12, 2007. *Washington*, 95 So. 3d at 49–51. With that, plus a *de novo* review of the record, the ACCA affirmed, explaining:

> "Without some explanation as to why counsel acted as he did, we presume that his actions were the product of an overall strategic plan." *Tong v. State,* 25 S.W.3d 707, 714 (Tex. Crim. App. 2000). Postconviction counsel failed to question Washington's trial attorneys concerning their strategy for the opening statement. When the record is silent as to why counsel

performed a certain way we must presume that counsel's actions were reasonable. *See Grayson, supra.*

Washington also failed to establish how he was prejudiced by counsel's performance in the opening statement. The circuit court did not abuse its discretion in denying relief on this claim.

*Id.* at 54.

The Rule 32 Court and the ACCA both rendered reasoned decisions on this IAC claim, and AEDPA review applies.

Washington has not shown that the ACCA unreasonably determined that he had failed to establish deficient performance or prejudice. In this action, Washington argues that counsel's failure to develop a theme after emphasizing it in the opening statement constitutes ineffective assistance of counsel. As the ACCA observed, however, Washington's postconviction counsel did not question trial counsel about their strategy for the opening statement, and because the record was silent as to why trial counsel gave the opening statement they gave, the ACCA presumed that trial counsel's actions were reasonable. The United States Supreme Court has opined that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'" that "the burden to 'show that counsel's performance was deficient' rests squarely on the defendant," and that "the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt*, 571 U.S. at 22–23 (quoting *Strickland*, 466 U.S. at 687, 689–90). In light of this guidance from the Supreme Court, the ACCA's presumption that trial counsel's actions were reasonable was reasonable under

AEDPA. *See id.*  Washington has failed to overcome the double deference to which the ACCA's determination of the performance prong was entitled. *See Pinholster*, 563 U.S. at 190.

Washington also cannot show that the ACCA unreasonably determined that prejudice was lacking.  Washington cites *Wiggins*, 539 U.S. 510, in support of his position that trial counsel's opening statement during the penalty phase was ineffective.  However, *Wiggins* does not help him because of procedural and factual differences from Washington's case.  First, *Wiggins* cannot help Washington show prejudice because AEDPA deference did not apply to the prejudice prong. *See* 539 U.S. at 534 ("In this case, our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis.").  Thus, because the Supreme Court "did not apply AEDPA deference to the question of prejudice" in *Wiggins*, *Wiggins* "offer[s] no guidance with respect to whether a state court has *unreasonably* determined that prejudice is lacking"—which is the relevant question in Washington's case. *See Pinholster*, 563 U.S. at 202 (emphasis in original); *accord Gavin*, 40 F.4th at 1269.

Additionally, *Wiggins* is factually distinct in that *Wiggins* did not hold that trial counsel's performance was deficient due to the opening statement.  True, the *Wiggins* Court discussed how trial counsel in her opening statement told the jury it would hear that the petitioner "has had a difficult life," but trial counsel "never followed up on that suggestion with details of [the petitioner's] history." 539 U.S. at 526.  But the Court ultimately held that trial counsel's performance was deficient because of counsel's inadequate

investigation into mitigating evidence—not the opening statement. *See id.* at 534–35.  This difference between *Wiggins* and Washington's case bolsters the Court's conclusion that *Wiggins* does not compel a different result, and Washington has not shown that the ACCA's prejudice determination was unreasonable.

In sum, Washington has failed to show that it was unreasonable for the ACCA to conclude that he had shown neither deficient performance nor prejudice, that the ACCA's decision was based on an unreasonable determination of the facts, or that any of the ACCA's factual determinations were incorrect. *See* 28 U.S.C. § 2254(d)–(e); *Strickland*, 466 U.S. at 694.  On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

> **e.   Washington's claim that trial counsel failed to present adequate mitigation evidence at the penalty phase**

The Court addressed Claim II.E of Washington's habeas petition above in Part VI.A.2.a.

> **f.   Washington's claim that trial counsel's penalty phase closing argument was deficient  and prejudicial**

Washington claims that trial counsel was ineffective because Perdue made a brief closing argument at the penalty phase which did not adequately discuss the mitigating factors the jury may consider.

This claim was heard at the evidentiary hearing the Rule 32 Court conducted on December 11–12, 2007.  Subsequently, on March 26, 2008, the Rule 32 Court denied this claim, finding it to be without merit, for these reasons:  "The Court finds that trial counsel's closing was not deficient or prejudicial.  The Court finds that trial counsel reasonably

argued what he could argue in an attempt to persuade the jury to come back with a recommendation of life without parole." (Doc. 20-32 at 74).

On appeal, the ACCA reviewed the record *de novo*. *Washington*, 95 So. 3d at 49–51.  The ACCA affirmed the Rule 32 Court's decision on this claim, explaining:

> In closing, counsel responded to the State's argument, tried to humanize Washington, and argued that the death penalty was not a deterrent and that Washington should be sentenced to life imprisonment without the possibility of parole.
>
> . . .
>
> At the postconviction evidentiary hearing, Washington failed to question counsel concerning his reasons for presenting the closing argument he presented.  Thus, we presume that counsel's actions were reasonable.  *See Grayson,* 257 F.3d at 1218.  Moreover, postconviction counsel failed to establish how Washington was prejudiced by trial counsel's closing argument. The circuit court did not abuse its discretion in denying relief on this claim.

*Id.* at 55.

The Rule 32 Court and the ACCA both rendered reasoned decisions on this IAC claim, and AEDPA review applies.

Washington has not shown that the ACCA unreasonably determined that he had failed to establish deficient performance or prejudice resulting from trial counsel's penalty phase closing argument.  The ACCA observed that Washington's postconviction counsel did not question trial counsel about their strategy for the closing argument, and because the record was silent as to why trial counsel gave the closing argument they gave, the ACCA presumed that trial counsel's actions were reasonable.   Given the Supreme Court's

admonition that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'" *Burt*, 571 U.S. at 22–23 (quoting *Strickland*, 466 U.S. at 687, 689–90), the ACCA's presumption that trial counsel's actions were reasonable, on this record, was reasonable under AEDPA. Washington has failed to overcome the double deference to which the ACCA's determination of the performance prong was entitled. *See Pinholster*, 563 U.S. at 190.

Washington also cannot show that the ACCA unreasonably determined that prejudice was lacking. While his submissions reflect a disagreement with the ACCA's decision, Washington fails to establish that it was unreasonable for the ACCA to conclude that there was no substantial probability of a different sentencing outcome if trial counsel had given a different closing argument—especially given the strong evidence of guilt and the aggravating circumstances.

In sum, Washington has failed to show that it was unreasonable for the ACCA to conclude that he had shown neither deficient performance nor prejudice, that the ACCA's decision was based on an unreasonable determination of the facts, or that any of the ACCA's factual determinations were incorrect. *See* 28 U.S.C. § 2254(d)–(e); *Strickland*, 466 U.S. at 694. On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

g.  **Washington's claim that trial counsel were ineffective by failing to object to the prosecution's improper statements at the penalty phase, including improper characterization of Alabama's sentencing law**

The entirety of this claim is contained in the following two sentences of Washington's habeas petition:

> Throughout the penalty phase, Mr. Washington's trial counsel sat idly by while the prosecution made prejudicial and misleading statements to the jury. Their failure to object to these statements (discussed further below) constituted ineffective assistance of counsel and independently warrants reversal of Mr. Washington's sentence.

(Doc. 1 at 71). In response, the Respondents submit that this claim is due to be dismissed because it is insufficiently pleaded, pointing out since "habeas corpus review exists only to review errors of constitutional dimension," a habeas corpus petition must meet the "heightened pleading requirements [of] 28 U.S.C. § 2254 Rule 2(c)." (Doc. 18 at 60).

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed this claim for the reasons stated below:

> This ground fails pursuant to Rule 32.6(b) for failure to state a clear and specific statement of the grounds upon which relief is sought, and it does not include a full disclosure of the factual basis of those grounds. Petitioner has made bare allegations that do not warrant any further proceedings.

(Doc. 20-32 at 53–54).

On appeal, the ACCA affirmed, explaining:

> In his amended petition, Washington merely pleaded the following in regard to this claim:
> > "The State made improper and prejudicial remarks throughout the trial, misstating the law during its closing argument, improperly relying

91

> on arguments that appealed to the jury's
> prejudices and emotions, improperly discussing
> the victims throughout the trial misstating the
> requirements of Alabama's sentencing laws and
> mischaracterizing the burden placed on the
> jurors in determining whether to impose a death
> sentence, improperly vouching for the credibility
> of witnesses, and improperly offering personal
> opinions."

(C.R. 257.)

Washington failed to identify the specific instances of
alleged prosecutorial misconduct that he maintained were
objectionable or how he was prejudiced by the alleged
misconduct. The circuit court correctly found that this claim
was due to be summarily dismissed based on Washington's
failure to plead full facts in regard to this claim.  *See* Rule
32.2(b), Ala. R.Crim. P.

*Washington*, 95 So. 3d at 68.

The Rule 32 Court and the ACCA both rendered reasoned decisions on this IAC

claim, and AEDPA review applies.

Washington has not shown that the ACCA unreasonably determined that he had not

established ineffective assistance of counsel resulting from trial counsel's failure to object

to the prosecution's statements at the penalty phase.  The state court determined that

Washington failed to plead this claim with sufficient specificity, and his federal habeas

petition similarly lacks specific allegations in support of this claim.  As in state court, he

does not sufficiently allege the specific comments made by the prosecutor to which his

counsel failed to object during the penalty phase.  Washington's submissions are

insufficient to overcome the double deference to which the state court's deficient

performance determination is entitled. *See Pinholster*, 563 U.S. at 190.

Additionally, Washington cannot show that the ACCA unreasonably determined that prejudice was lacking, especially given the substantial physical evidence presented at trial and the existence of three aggravating circumstances.  While his submissions reflect a disagreement with the ACCA's decision, Washington fails to establish that it was unreasonable for the ACCA to conclude that there was no substantial probability of a different sentencing outcome if trial counsel had objected to the prosecution's allegedly prejudicial comments.

In sum, Washington has failed to show that it was unreasonable for the ACCA to conclude that he had shown neither deficient performance nor prejudice, that the ACCA's decision was based on an unreasonable determination of the facts, or that any of the ACCA's factual determinations were incorrect.  *See* 28 U.S.C. § 2254(d)–(e); *Strickland*, 466 U.S. at 64.  On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

### h.   Washington's claim that trial counsel were ineffective by failing to object to the court's improper instructions on mitigating factors

Washington also claims that trial counsel were ineffective for failing to object to the trial court's instructions on mitigating factors, which Washington contends were erroneous.

Following oral argument on the State's motion to dismiss, the  Rule 32 Court dismissed this claim, stating:  "This claim fails pursuant to Rule 32.7(d) because it is without merit.  No purpose would be served by further proceedings." (Doc. 20-32 at 54).

On appeal, the ACCA affirmed, explaining:

The record shows that the circuit court gave the following jury instruction:

"The law of Alabama provides a list of some of the mitigating circumstances you may consider.  That list is not a complete list of mitigating circumstances that you may consider.  I will now read you a list of some of the mitigating circumstances that you may consider.

"The following are the mitigating circumstances included in the statute.  This list is not exhaustive.  There are other circumstances that may be considered by you as well.

"*In going through the mitigating circumstances that are listed in the Code of Alabama here I find one that is applicable.  And that is that the defendant has no significant history of prior criminal activity.*

"As I told you, a mitigating circumstance does not have to be included in the list that I read to you in order for it to be considered by you.

"In addition to the mitigating circumstances or circumstance previously specified, a mitigating circumstance shall include any aspect of a defendant's character or record, and any of the circumstances of the offense that the defense offers as a basis for the sentence of life imprisonment without parole instead of death."
(Trial R. 959–60.)

This claim was not supported by the record. The circuit court correctly summarily dismissed this claim pursuant to Rule 32.7(d), Ala. R. Crim. P., because "no material issue of fact or law exist[ed] which would entitle" Washington to relief.

*Washington*, 95 So. 3d at 68–69 (emphasis added).

The Rule 32 Court and the ACCA both rendered reasoned decisions on this IAC claim, and AEDPA review applies.

Washington has not shown that the state court's determination of this claim was unreasonable. He contends that trial counsel were ineffective for failing to object to the trial court's instructions on mitigating factors because, according to Washington, the jury likely gave heavy weight to the trial court's "opinion" that "only" one mitigating factor applied in his case—his lack of criminal history. (Doc. 1 at 72). This argument, however, cherry-picks one portion of the trial court's instruction in which the court opined that one *statutory* mitigating circumstance applied in Washington's case. Washington omits the trial court's additional instructions that the statutory list of mitigating circumstances was "not exhaustive," and "[i]n addition to the mitigating circumstances or circumstance previously specified, a mitigating circumstance shall include any aspect of a defendant's character or record, and any of the circumstances of the offense that the defense offers as a basis for the sentence of life imprisonment without parole instead of death." Thus, it was not unreasonable for the ACCA to determine that Washington's claim was not supported by the record. And it cannot be said that trial counsel rendered ineffective assistance for failing to make a meritless objection. *See Chandler*, 240 F.3d at 917.

Moreover, even if counsel's failure to object to the trial court's instructions on mitigating circumstances amounted to deficient performance, Washington has not shown prejudice. Considering the entire record, Washington fails to establish a reasonable probability that he would have received a different sentence if trial counsel had objected to the trial court's instructions on mitigating circumstances. *See Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694.

In sum, Washington has failed to show that the ACCA's decision on this claim was unreasonable, that the ACCA's decision was based on an unreasonable determination of the facts, or that any of the ACCA's factual determinations were incorrect. *See* 28 U.S.C. § 2254(d)–(e); *Strickland*, 466 U.S. at 694.  On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

### i. Washington's claim that trial counsel failed to object to the death sentence as disproportionate in violation of his federal rights

Washington also claims that trial counsel were ineffective for failing to object to the death sentence as disproportionate.  Washington contends that the ACCA did not address this claim on appeal and therefore this Court should review the claim *de novo*. (Doc. 1 at 73, para. 219).  In response, the Respondents contend that this claim is unexhausted and thus procedurally barred because Washington did not raise it on appeal from the denial of his Rule 32 petition.  In the alternative, the Respondents argue that this claim should be dismissed because it fails to comply with Rule 2(c) of the *Rules Governing Section 2254 Cases in the United States District Courts*. (Doc. 18 at 64–66).  In reply, Washington insists that this claim was raised on appeal and that it appears in his appellate brief[18] filed in the ACCA; therefore, according to Washington, he exhausted the claim and it is not procedurally barred in this Court. (Doc. 32 at 35–36).  Below, the Court summarizes how and to what extent Washington presented this claim in state court.

---

[18]  Washington refers to "Brief of Appellant Charlie Washington" identified as Vol. 29, Tab R-49 at 81 of the State Court Record.  Per the Court's CM/ECF numbering system, this reference is to Doc. 20-29 at 97.

In Washington's Amended Rule 32 Petition, he asserted in "Claim J." that his trial counsel were ineffective because they "failed to object to the death sentence as disproportionate in violation of Mr. Washington's state and federal rights." (Doc. 20-12 at 86, para. 177).   Washington claimed that based on the mitigating factors in his case, including his family mental health history and his own history of poverty and abuse, his counsel were ineffective for not informing the jury of these and other mitigating factors, and that had counsel done so, there is a reasonable probability that the jury would have recommended a sentence of life without parole instead of death. (Doc. 20-12 at 86–87). The Rule 32 Court dismissed this claim. (Doc. 20-32 at 54).

On appeal to the ACCA, while Washington mentioned disproportionate punishment in his appellate brief, he did not present this claim as a standalone claim like he did in the Rule 32 petition.   Instead, it was presented in combination with a claim concerning counsel's failure to object to the imposition of the death penalty and to the double-counting of robbery.   On appeal, disproportionate punishment is referenced in his appellate brief in Section IV.C.2.r. entitled "Trial counsel's failure to object to the imposition of the death penalty and to the double-counting of robbery." (Doc. 20-29 at 96).   In this section of his brief, he argues:

> Washington adequately alleged that trial counsel failed to object to the imposition of the death penalty on the basis of the mitigating facts, including Washington's family mental health history and his own history of poverty and abuse, and failed to object to the double-counting of robbery as both an element of the capital offense and as an aggravating circumstance. Washington  specifically asserted numerous mitigating factors that showed that the death penalty is a disproportionate punishment, and that the alleged robbery was impermissibly

> counted both as an elevator in the guilt phase and as an
> aggravator in the penalty phase. C. 284-86. These allegations
> supported Washington's claim that his trial counsel were
> ineffective.

(*Id.* at 97).

The Court doubts that Washington exhausted this claim in state court. *See Pope*, 680 F.3d at 1286. Although he referenced disproportionate punishment in his appellate brief, he did not articulate with clarity a separate claim that trial counsel were ineffective for failing to object to a death sentence as disproportionate in his particular case. Nonetheless, this Court will assume without deciding that Washington adequately presented this "disproportionate penalty" claim to the ACCA such that he exhausted this claim. Because the ACCA did not address the claim, and the Court assumes that Washington adequately raised it, the Court will review the claim *de novo*.[19]

Upon *de no* review, Washington is not entitled to federal habeas relief on this claim, for (at least) two reasons. First, this claim fails to comply with the pleading requirements of Rule 2(c) of the *Rules Governing Section 2254 Cases in the United States District Courts*. As the United States Supreme Court has explained, habeas petitioners are held to a higher pleading standard than plaintiffs in ordinary civil actions:

> In ordinary civil proceedings, the governing Rule, Rule 8 of the
> Federal Rules of Civil Procedure, requires only "a short and
> plain statement of the claim showing that the pleader is entitled

---

[19] This Court may deny a habeas corpus petition on the merits, notwithstanding the petitioner's failure to exhaust state court remedies. *See* 28 U.S.C. § 2254(b)(2); *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015) ("[A] court may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question.") (parenthetical in original)). Thus, this Court is authorized to deny relief on potentially unexhausted claims (without first deciding whether the claims are unexhausted) when the claims in question lack merit under *de novo* review.

> to relief." Fed. R. Civ. P. 8(a)(2). Rule 2(c) of the Rules
> Governing Habeas Corpus Cases requires a more detailed
> statement. The habeas rule instructs the petitioner to "specify
> all the grounds for relief available to [him]" and to "state the
> facts supporting each ground."

*Mayle v. Felix*, 545 U.S. 644, 649 (2005). To comply with Rule 2(c)'s heightened pleading

standard, Washington must allege the factual basis of this claim before the federal habeas

court can consider it. Washington's disproportionate sentence claim, in its entirety,

consists of the following paragraph in his federal habeas petition:

> Based on the mitigating facts, including Mr. Washington's
> family mental health history and his own personal history of
> poverty and abuse, the death penalty is disproportionate. Trial
> counsel's failure to object to the imposition of the death
> penalty, and failure to adequately present mitigating facts,
> constitutes ineffective assistance of counsel. Had Mr.
> Washington's counsel adequately represented Mr. Washington
> at the penalty phase, there is a reasonable possibility that the
> jury would have been aware of the extensive mitigating
> circumstances and would have returned with a recommended
> sentence less than the death penalty.

(Doc. 1 at 72). This paragraph amounts to little more than conclusory statements with

insufficient supporting facts. For example, other than a generic reference to his family

mental health history and his own personal history of poverty and abuse, Washington does

not adequately state the mitigating facts that counsel should have presented to the jury in

the penalty phase or argued to the trial court at the sentencing hearing in support of his

claim that a death sentence was a disproportionate penalty. Similarly, he does not allege

in sufficient detail his family mental health history and his own personal history of poverty

and abuse. Further, while he alludes to mitigating facts other than the categories

mentioned, he does not allege those other facts.  Consequently, this claim is due to be dismissed because it does not satisfy Rule 2(c)'s pleading requirements.

Even if this claim satisfied federal habeas pleading standards, Washington has nonetheless failed to establish entitlement to federal habeas relief because he has not shown a reasonable probability of a different sentence had trial counsel made a disproportionate penalty argument.  Washington claims that trial counsel should have argued that the death penalty was a disproportionate penalty for him based on mitigating factors.  This Court agrees with the Rule 32 Court's analysis and conclusion that, weighing all of the mitigating factors and the aggravating factors and considering the entire record, including the substantial evidence of Washington's guilt, there is not a reasonable probability that Washington would have received a different sentence if his trial counsel had presented additional mitigation evidence.  It follows that Washington has not shown a reasonability probability of a different sentence if his trial counsel had made a disproportionate penalty argument which was premised upon the existence of mitigation evidence.  To show prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.  For this additional, independent reason, Washington has not shown entitlement to federal habeas relief on this claim.

> **j.** **Washington's claim that trial counsel were ineffective in failing to object to the "double counting" of robbery and burglary as elements of capital murder and aggravating circumstances that can justify a death sentence**

Washington also contends that trial counsel were ineffective for failing to object to the allegedly impermissible "double counting" of robbery and burglary as both elements of capital murder and aggravating circumstances which can justify a death sentence.

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed this claim, stating:  "This claim is without merit and fails pursuant to Rule 32.7(d).  No material issue of fact or law exists which would entitle Petitioner to relief and no purpose would be served by further proceedings." (Doc. 20-32 at 54–55).

On appeal, the ACCA affirmed, explaining:

> This Court has repeatedly upheld the practice of using an element of the capital murder offense as an aggravating circumstance.  *See, e.g., Brown v. State,* 74 So.3d 984 (Ala. Crim. App. 2010); *James v. State,* 61 So.3d 357 (Ala. Crim. App. 2010); *Morris v. State,* 60 So.3d 326 (Ala. Crim. App. 2010).  Counsel cannot be ineffective for failing to raise a claim that has no merit. *Lee v. State,* 44 So.3d 1145, 1173 (Ala. Crim. App. 2009).
>
> The circuit court did not abuse its discretion in summarily dismissing this claim because there was "no material issue of fact or law" that would entitle Washington to relief. *See* Rule 32.7(d), Ala. R. Crim. P.

*Washington*, 95 So. 3d at 70.

The Rule 32 Court and the ACCA both rendered reasoned decisions on this IAC claim, and AEDPA review applies.

Washington fails to show that the ACCA's decision was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  The Supreme

Court cases he cites in his petition do not stand for the proposition that the U.S. Constitution prohibits the use of an element of a capital murder offense as an aggravating circumstance at sentencing. (Doc. 1 at 73–74) (citing *Gregg v. Georgia*, 428 U.S. 153 (1976); *Zant v. Stephens*, 462 U.S. 862, 877 (1983); and *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).  In sum, Washington has failed to show that ACCA's decision was unreasonable, that the decision was based on an unreasonable determination of the facts, or that any of the ACCA's factual determinations were incorrect. *See* 28 U.S.C. § 2254(d)–(e); *Strickland*, 466 U.S. at 694.  On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

> ### k.  Washington's claim that trial counsel's statements at his judicial sentencing hearing highlighted their failure to present an adequate mitigation case

The Respondents contend that this claim is procedurally barred because Washington did not raise it on appeal from the denial of his Rule 32 petition.  In the alternative, the State argues that this claim should be dismissed because it fails to comply with Rule 2(c) of the *Rules Governing Section 2254 Cases in the United States District Courts*. (Doc. 18 at 68–70).  Washington replies that this claim was raised on appeal and that it appears in his appellate brief[20] filed in the ACCA; therefore, according to Washington, he exhausted the claim and it is not procedurally barred in this Court.  (Doc. 32 at 36).  He further asserts that, because the ACCA did not decide this claim, it is subject to *de novo* review in this

---

[20]  Washington refers to "Brief of Appellant Charlie Washington" identified as Vol. 29, Tab R-49 at 82 and 85 of the State Court Record.  Per the Court's CM/ECF numbering system, this reference is to Doc. 20-29 at 98 and 101.

Court.  Below, the Court summarizes how and to what extent Washington presented this claim in state court.

In Washington's Amended Rule 32 Petition, he asserted in "Claim L." that his counsel's statements at the sentencing hearing "highlighted their failure to present an adequate mitigation case." (Doc. 20-12 at 88).  Following oral argument, the Rule 32 Court summarily dismissed this claim. (Doc. 20-32 at 55).   On appeal, Washington did not present this claim to the ACCA as a standalone claim like he did in his Rule 32 proceedings. He contends that he raised this claim in his appellate brief within the claim in Section IV.C.2.s. entitled "Trial counsel's failure to present a meaningful mitigation case" (doc. 20-29 at 97–98), and that he reiterated it within the claim in Section IV.C.2.u. entitled "Appellate counsel's failure to investigate and present the case for trial counsel's ineffectiveness" (doc. 20-29 at 100–01).

In this action, Washington claims that his counsel's statements at the March 2004 sentencing hearing "highlighted their failure to present an adequate mitigation case." (Doc. 1 at 74).  He points out that his counsel "noted a litany of possible mitigating factors, including [his] lack of criminal history, his children, his drug use, his competency at the time of the alleged murders in light of his intoxication, his lack of education, his troubled family history, his efforts to care for his elderly and convalescent mother, the effect of a death sentence on his grandchildren, and the effect of a death sentence on his family." (*Id.*). Washington contends that his counsel's "attempt to construct a mitigation case two months after the jury returned its verdict was a classic example of 'too little, too late.'" (*Id.*).

Assuming without deciding that Washington exhausted this claim, which the Court questions, the claim nonetheless fails on the merits because Washington has not shown a reasonable probability of a different sentence absent counsel's alleged errors.  The Court will also assume for argument's sake that his federal habeas petition complies with Rule 2(c)'s pleading requirements.  In essence, this claim amounts to another variation of his claim that trial counsel failed to present readily available mitigation evidence at sentencing. As explained earlier, this Court agrees with the Rule 32 Court's analysis and conclusion that, weighing all of the mitigating factors and the aggravating factors and considering the entire record, including the substantial evidence of Washington's guilt, there is not a reasonable probability that Washington would have received a different sentence if his trial counsel had presented additional mitigation evidence.  It follows that Washington has not shown a substantial likelihood of a different sentence if his trial counsel had not made statements which highlighted their alleged failures to present an adequate mitigation case. *See Harrington*, 562 U.S. at 112 (explaining that to show prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable").  For this reason, Washington has not shown entitlement to federal habeas relief on this claim.

> **l.  Washington's claim that trial counsel were ineffective because they did not object to the circuit court's express consideration of victim impact testimony from the McKinnons' family about the crime and the appropriate punishment**

Washington argues that trial counsel were ineffective for failing to object to the trial court's consideration of victim impact testimony from the McKinnons' family about the crime and the appropriate punishment.

Following oral argument on the State's motion to dismiss, the Rule 32 Court
dismissed this claim for the reasons stated below:

> This ground fails pursuant to Rule 32.7(d) because it
> fails to state a claim, and no material issue of fact or law exists
> which would entitle Petitioner to relief.  No purpose would be
> served by further proceedings.   This testimony was given
> during the penalty phase of the trial.  Victim impact evidence
> is permitted at the penalty phase.  *Ex parte Slaton*, 680 So. 2d
> 909, 927 (Ala. 1996).

(Doc. 20-32 at 55).

On appeal, the ACCA affirmed, explaining:

> The record shows no indication that the circuit court
> considered the daughter's remarks when determining
> Washington's sentence.   To the contrary, the circuit court
> specifically stated in its sentencing order:  "In weighing the
> aggravating and mitigating circumstances, the Court is aware
> of the nature of the process as defined in Section 13A–5–48."
> (Trial R. 201).  This Court has found no error in the admission
> of victim-impact evidence when there is no indication in the
> sentencing order that the remarks were considered by the
> sentencing court.  *See Arthur v. State,* 711 So.2d 1031 (Ala.
> Crim. App. 1996) (no error in the admission of statements in
> presentence report that victim's family wished that the
> defendant be sentenced to death when there was no indication
> in the sentencing order that the court considered these
> statements). Counsel is not ineffective for failing to object to
> an issue that has no merit.  *See James, supra.*
> Thus, the circuit court did not abuse its discretion in
> summarily dismissing this claim because "no material issue of
> fact or law" existed that would entitle Washington to relief.
> *See* Rule 32.7(d), Ala. R. Crim. P.

*Washington*, 95 So. 3d at 71.

The Rule 32 Court and the ACCA both rendered reasoned decisions on this IAC
claim, and AEDPA review applies.

Washington cannot show that the ACCA's decision on this claim was unreasonable. The Supreme Court has held that "if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar.  A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." *Payne*, 501 U.S. at 827.  Washington asserts that, notwithstanding *Payne*, a sentencer "may not consider victim impact evidence about *the crime, the defendant*, or *the appropriate punishment*." (Doc. 1 at 75, para. 228) (emphases added).  But Washington has not shown that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d).  Additionally, Washington fails to establish that the state court unreasonably determined that the record lacked any indication that the trial court considered the McKinnon family's remarks when determining Washington's sentence.  Although Washington's submissions reflect a disagreement with the state court's conclusion, he fails to establish that the state court's decision was "so obviously wrong as to be 'beyond any possibility for fairminded disagreement.'" *See Shinn*, 592 U.S. at 124  (quoting *Harrington*, 562 U.S. at 103).  Thus, on AEDPA review, Washington is not entitled to federal habeas relief on this claim.

>    **m.    Washington's claim that the cumulative effect of counsel's performance denied him his right to effective assistance of counsel at the penalty phase of his capital trial**

Washington claims that, when the series of his trial counsel's alleged "miscalculations and missed opportunities" at the penalty phase are viewed in combination,

he was denied effective assistance of counsel in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  He contends that but for trial counsel's deficient performance, he would not have been convicted of capital murder and sentenced to death.

Following oral argument on the State's motion to dismiss, the Rule 32 Court summarily dismissed this claim, stating:  "This claim fails pursuant to Rule 32.6(b) for failure to state a clear and specific statement of the grounds upon which relief is sought, and it does not include a full disclosure of the factual basis of those grounds.  This ground merely states conclusions of law are insufficient to warrant any further proceedings." (Doc. 20-32 at 55).

The Respondents contend that this claim is procedurally barred because Washington did not raise it in his appeal of the denial of his Rule 32 petition.  In the alternative, the Respondents argue that this claim should be dismissed because it fails to comply with Rule 2(c) of the *Rules Governing Section 2254 Cases in the United States District Courts*. (Doc. 18 at 73–74).

In reply, Washington asserts that this claim was raised on appeal and that it appears in his appellate brief[21] filed with the ACCA; therefore, according to Washington, he exhausted this claim and it is not procedurally barred in this Court. (Doc. 32 at 36–37). The portion of Washington's appellate brief to which he refers is Section IV.C.1, which

---

[21]  Washington refers to "Brief of Appellant Charlie Washington" identified as Vol. 29, Tab R-49 at 50-53 of the State Court Record.  Per the Court's CM/ECF numbering system, this reference is to Doc. 20-29 at 66-69.

contains the following subheading:  "The Circuit Court's failure to consider the ineffective assistance of counsel claim as a whole requires reversal of the order dismissing portions of that claim." (Doc. 20-29 at 66).  An excerpt from that section of his appellate brief is set out below:

> The U.S. Supreme Court has explained that evidence of ineffective assistance of counsel must be viewed as a whole. *See Rompilla v. Beard*, 545 U.S. 374, 393 (2005) ("the undiscovered mitigating evidence, *taken as a whole*, might well have influenced the jury's appraisal of [petitioner's] culpability, and the likelihood of a different result if the evidence had gone in is sufficient to undermine confidence in the outcome actually reached at sentencing") (emphasis added) (internal quotation marks omitted); *Williams*, 529 U.S. at 399 ("the entire postconviction record, *viewed as a whole and cumulative of mitigation evidence presented originally*, raised a reasonable probability that the result of the sentencing proceeding would have been different if competent counsel had presented and explained the significance of al1 the available evidence") (emphasis added) (citation and internal quotation marks omitted); *Kyles v. Whitley*, 514 U.S. 419, 434-41 (1995) (explaining that, in assessing prejudice, courts must consider the cumulative effect of the conduct at issue).

(*Id.* at 66–67).

It is unclear from Washington's appellate brief to the ACCA whether his "cumulative effect" claim concerns the guilt phase, the penalty phase, or both. Nonetheless, this Court will assume without deciding that Washington adequately presented to the ACCA his claim of cumulative error at the penalty phase such that he exhausted this claim.  Because the ACCA did not address the claim, and the Court assumes without deciding that it is not procedurally barred, the Court reviews the claim *de novo*.

Upon review (either AEDPA or *de novo*, as appropriate) of each of Washington's twelve guilt phase IAC claims, this Court concluded that he was not entitled to relief on any of them. As explained earlier, the Eleventh Circuit instructs courts assessing claims of cumulative error to first consider "the validity of each claim individually, and then examin[e] any errors . . . in the aggregate and in light of the trial as a whole to determine whether the [petitioner] was afforded a fundamentally fair trial." *Morris*, 677 F.3d at 1132. As explained above, none of Washington's individual claims of penalty phase error or prejudice entitle him to relief, and therefore this Court has "nothing to accumulate." *See id.* Zero times twelve still equals zero. Consequently, on *de novo* review, Washington's cumulative error argument fails, and Washington is not entitled to federal habeas relief on this claim. *See id.*

> **n.   Washington's claim that the state court's adjudication of his ineffective assistance claim during the penalty phase was based on an incorrect application of law and fact**

Washington also claims that, when the ACCA affirmed the Rule 32 Court's decision that trial counsel were not ineffective at the penalty phase, the ACCA's decision was based on clearly erroneous factual findings. (Doc. 1 at 76–77). Washington alleges that the ACCA made three clearly erroneous factual findings: (1) Perdue had reviewed Dr. Salekin's report before he decided not to call her as a witness during the penalty phase; (2) Dr. Salekin had not relayed to trial counsel that her report was incomplete; and (3) Washington was not prejudiced by trial counsel's failure to furnish Dr. Salekin with mental health records because Washington had been mentally evaluated before trial, and

Dr. Salekin had access to that report. (*Id.* at 77).  The Court addresses each factual finding in turn.

### i.  trial counsel's review of Dr. Salekin's report

The Court begins with Washington's claim concerning trial counsel's review of Dr. Salekin's report.  Washington claims that the ACCA "adopted the Circuit Court's finding that Mr. Perdue, the attorney responsible for presenting Mr. Washington's mitigation case to the jury, had reviewed Dr. Salekin's report, when Mr. Perdue testified that he had not." (*Id.* at 77) (citation omitted).

In addressing Washington's claim that counsel were ineffective by failing to prepare a mitigation case before the penalty phase, the Rule 32 Court found:

> . . .  The facts establish that Mr. James retained Dr. Salekin to prepare a mitigation report.  After reviewing Dr. Salekin's report, Mr. James and Mr. Perdue made the tactical and strategic decision not to call her as a witness.  If they had called her as a witness, then the jury would have been exposed to information which would have been extremely damaging to Mr. Washington.

(Doc. 20-32 at 71–72).  On appeal, the ACCA adopted the foregoing finding. *Washington*, 95 So. 3d at 48.

The testimony from Perdue and James at the Rule 32 hearing established that James retained Dr. Salekin to do a mitigation evaluation. (Doc. 20-25 at 77).  Perdue had no contact with Dr. Salekin. (*Id.* at 185).  Dr. Salekin provided her report to James (*id.*), and James reviewed her entire report (*id.* at 198).  Although Perdue never read her report, he and James discussed the information contained therein and decided not to call her as a mitigation witness. (*Id.* at 100–01).  Perdue testified:  "James said the only thing that Ms.

Salekin could tell us was that our client was a drug addict or drug user.  It was not particularly helpful." (*Id.* at 100).  James confirmed this assessment of Dr. Salekin's report:

> She told me that she could offer nothing by way of troubled childhood, drug addiction, you know, anything of that nature that would have assisted us in showing that Charlie was not responsible for his actions.  She could offer me nothing in the way of mitigation.  I suppose, is what she basically said.  She wasn't going to be any help to me because there were no psychological issues, no mental health issues, no drug addiction issues, nothing that would have helped us in mitigation.

(Doc. 20-26 at 3–4).  James further testified that "the essence of our conversation" was that "based on her investigation, her testimony could be actually more harmful than good." (*Id.* at 4).

Washington appears to interpret the Rule 32 Court's Order as containing an erroneous factual finding that Perdue read Dr. Salekin's report, when Perdue testified that he did not.  However, the Rule 32 Court did not expressly find that Perdue *read* the report.  Instead, the Rule 32 Court stated:  "After *reviewing* Dr. Salekin's report, Mr. James and Mr. Perdue made the tactical and strategic decision not to call her as a witness." (Doc. 20-32 at 71) (emphasis added).  Viewed in context, Perdue's and James' respective testimony establishes that, after James read Dr. Salekin's report, he and Perdue discussed it, and based on the information contained in the report, James and Perdue decided not to call Dr. Salekin as a mitigation witness.  Although perhaps the Rule 32 Court's language concerning Perdue's "review" of Dr. Salekin's report could have been more precise, Washington has not shown that the state court's factual finding was "clear[ly] and convincing[ly]" erroneous. *See* 28 U.S.C. § 2554(e)(1); *cf. Pye*, 50 F.4th at 1043 ("While the [state] court's

determination that these affidavits contained inconsistencies might have been debatable, it wasn't 'clear[ly] and convincing[ly]' erroneous." (second and third alterations in original)). He also has not shown that the state court's "decision" was "based on" an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See id.* § 2554(d)(2).

### ii.  the completeness of Dr. Salekin's report

Washington also claims that the ACCA made an erroneous factual finding when it "adopted the Circuit Court's finding that Dr. Salekin had not relayed to trial counsel that her report was incomplete," even though "on the face of the report itself Dr. Salekin stated that she had not received requested information." (Doc. 1 at 77).

In the state collateral proceedings, the Rule 32 Court found no merit to Washington's claim that his counsel were ineffective for relying on the alleged incomplete report of Dr. Salekin.  The Rule 32 Court observed that, while Dr. Salekin testified at the Rule 32 hearing that her report was incomplete, she did not convey that fact to Washington's counsel when she submitted the report to them in January 2004.  The Rule 32 Court explained the rationale for rejecting this IAC claim, as follows:

> Dr. Salekin was retained by trial attorney Kenny James to perform a mitigation evaluation on the Petitioner's behalf. Although she testified at the hearing that her report was incomplete, she did not relay any such thing to Mr. James at the time she prepared it.  She worked on this report for approximately two and one-half months and consulted with the Petitioner, his mother, his half-sister, his brother, one of Petitioner's former employers, a former co-worker, a previous customer, and one of his attorneys, Mr. James.  She noted in her report that there were other people whom she attempted to contact but was unable to.  She also noted that she had

> requested school and mental health records and was unable to
> secure those documents as well.

(Doc. 20-32 at 66).  On appeal, the ACCA adopted the foregoing finding. *Washington*, 95

So. 3d at 45.

The cover page of Dr. Salekin's report contains a note stating that she had been

unable to contact all of the individuals from whom she hoped to obtain information about

Washington, and that she been unable to obtain all records requested.  As to those records

requested but not provided, her report states that "such information pertaining to these

issues was provided by self-report or discussions with collateral sources." (Doc. 20-17 at

132).  Her note states in pertinent part as follows:

> ***Note:***   Contact with other family members, previous
> employers, ex-wives, and girlfriends were attempted but
> unsuccessful. . . .  This examiner requested school records,
> medical/mental health records, employment records and
> contact information for former employers, friends and family
> members.  Contact information for the majority of family
> members was not provided until January 2004 (Ms. Patricia
> Glenn did not have the numbers at the time of first contact but
> later provided these numbers to this examiner) and contact with
> these individuals was attempted but unsuccessful.  Records
> pertaining to school involvement, medical/mental health, and
> employment history could not be obtained and such,
> information pertaining to these issues was provided by self-
> report or discussions with collateral contacts.

(*Id.*).

In sum, the note advises that, because she had been unable to obtain Washington's

school records, medical or mental health records, and employment history records, she

obtained "such information" from other sources, such as Washington himself or from

discussions with others.  This note, however, does not expressly state that her report is

incomplete.  Besides this note, Washington does not identify evidence establishing that Dr. Salekin had relayed to Washington's trial counsel that her report was incomplete.  Thus, the state court's finding that Dr. Salekin had not relayed to trial counsel that her report was incomplete was not "clear[ly] and convincing[ly]" erroneous. *See* 28 U.S.C. § 2554(e)(1). Washington also has not shown that the state court's "decision" was "based on" an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See id.* § 2554(d)(2).

> ### iii.    trial counsel's failure to provide Washington's mental health records to Dr. Salekin

Washington also claims that the ACCA erred in finding that he was not prejudiced by counsel's failure to provide mental health records to Dr. Salekin because, according to the ACCA, Dr. Salekin had access to a mental evaluation of Washington which had been conducted before his trial.  Washington challenges the ACCA's finding on the basis that "the report to which the [ACCA] was referring was only meant to determine Mr. Washington's competency to stand trial.  It did not evaluate Mr. Washington's mental health for any other purpose." (Doc. 1 at 77).

In response, the Respondents counter that Washington's argument is without merit because Dr. Kirkland, the psychologist who evaluated Washington's competency to stand trial, also evaluated Washington's mental state at the time of the offense. (Doc. 20-1 at 78–85).  Therefore, according to the Respondents, Washington's assertion of erroneous factfinding by the ACCA is unsupported by the record.

On appeal to the ACCA, Washington claimed that in denying his IAC claim, the Rule 32 Court erred, in part, because it overlooked the fact that his counsel failed to provide Dr. Salekin with his school records and mental health records. *Washington*, 95 So. 3d at 44. The ACCA rejected this claim for the following reasons:

> Furthermore, Washington was mentally evaluated before his trial, and Dr. Salekin had access to that report. Washington was not prejudiced by counsel's failure to furnish Dr. Salekin with school and mental-health records, and the circuit court did not abuse its discretion in denying this claim.

*Id.* at 45–46.

Dr. Kirkland's forensic evaluation report reveals that, on August 19, 2003, he evaluated Washington to assess his competency to stand trial *and* to assess his mental state at the time of the offense. (Doc. 20-1 at 78–85). Thus, contrary to Washington's assertions, Dr. Kirkland's evaluation of Washington was not confined to a competency evaluation. Washington does not dispute that Dr. Salekin had access to Dr. Kirkland's report. Upon review, Washington has not shown that any of the state court's factual findings in this regard were "clear[ly] and convincing[ly]" erroneous. *See* 28 U.S.C. § 2554(e)(1). He also has not shown that the state court's "decision" was "based on" an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See id.* § 2554(d)(2). On AEDPA review, Washington is not entitled to federal habeas relief.

### 3.   Washington's IAC Claims Against Appellate Counsel

A defendant also has a constitutional right to the effective assistance of appellate counsel. *See Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985).  An IAC claim against appellate counsel is governed by the same standard for trial counsel as established in *Strickland*.

Washington claims that his appellate counsel was ineffective for not having raised on direct appeal (1) "the clear instances of prosecutorial misconduct" which allegedly occurred at this trial; and (2) the ineffectiveness of his trial counsel by not objecting to "the admission of highly prejudicial photographic and video evidence . . . of the crime scene." (Doc. 1 at 80).

In response, the Respondents contend that the Rule 32 Court and the ACCA made specific findings of fact as to this claim and that in this proceeding, those findings are presumed correct. (Doc. 18 at 79).  The Respondents also argue that the ACCA rejected this claim on the merits in affirming the denial of post-conviction relief in the court below. *Washington*, 95 So. 3d at 71–73.  The Respondents posit that the state court resolution of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law and that the state court resolution was based on a reasonable determination of the facts.  Therefore, according to the Respondents, this claim should be denied under 28 U.S.C. § 2254(d). (Doc. 18 at 77).

### a.   Washington's claim that appellate counsel failed to raise instances of prosecutorial misconduct

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed this claim for the reasons stated below:

> This ground fails pursuant to Rule 32.6(b) for failure to state a clear and specific statement of the grounds upon which relief is sought, and it does not include a full disclosure of the factual basis of those grounds.  Petitioner fails to describe exactly which issues should have leapt out at appellate counsel, and how those specific instances were obviously improper.

(Doc. 20-32 at 58).

On appeal, the ACCA affirmed, explaining:

> Washington failed to identify any specific instances of prosecutorial misconduct that appellate counsel failed to raise on appeal.  Washington merely pleaded that "the failure of appellate counsel to raise other claims on direct appeal constitutes performance that fell below 'an objective standard of reasonableness.'"  (C.R. 305–06.)  Clearly, Washington failed to plead full facts in support of this claim; therefore, it was properly summarily dismissed.

*Washington*, 95 So. 3d at 73.

The Rule 32 Court and the ACCA both rendered reasoned decisions on this IAC claim, and AEDPA review applies.

Washington has not shown that the state court unreasonably decided this claim.  The state court determined that Washington failed to plead this claim with sufficient specificity, and his federal habeas petition similarly lacks specific allegations in support of this claim.  As in state court, he does not sufficiently allege the specific instances of prosecutorial misconduct which appellate counsel failed to raise on appeal.  Washington's submissions are insufficient to overcome the double deference to which the state court's deficient performance determination is entitled. *See Pinholster*, 563 U.S. at 190.  Moreover, even if appellate counsel's alleged errors amounted to deficient performance, Washington has not shown prejudice. *See Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694.

In sum, Washington has not overcome the deference to which the state court's ruling on this claim is entitled, and he has not rebutted the presumption that the state court's findings of fact on this claim are correct.  On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

> **b.    Washington's claim that appellate counsel failed to raise the ineffectiveness of trial counsel for failing to object to the admission of photographic and videotaped evidence of the crime scene**

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed this claim, for the reasons stated below:

> Appellate counsel's failure to raise any ineffective assistance of counsel issues has not prejudiced Mr. Washington.  These claims can and have been properly brought in a Rule 32 Petition.  This claim fails pursuant to Rule 32.7(d) because it fails to state a claim, and no material issue of fact or law exists which would entitle Petitioner to relief.  No purpose would be served by further proceedings.

(Doc. 20-32 at 57–58).

On appeal, the ACCA affirmed, explaining:

> This Court's records show that appellate counsel was appointed after the time for filing a motion for a new trial had expired.  Thus, appellate counsel had no opportunity to raise a claim of ineffective assistance of counsel and to make a record for purposes of appeal.  This postconviction proceeding was Washington's first opportunity to raise a claim of ineffective assistance of trial counsel.  *See Ex parte Ingram,* 675 So.2d 863 (Ala. 1996).

*Washington*, 95 So. 3d at 71–72.  The ACCA also explained the difficulty of reviewing IAC claims on direct appeal when those claims have not been developed on the record below, as the United States Supreme Court observed in *Massaro v. United States*, 538 U.S.

500 (2003).  *Id.* at 72.  For these reasons, the ACCA held that the Rule 32 Court did not abuse its discretion in summarily dismissing this IAC claim.  *Id.* at 73.

The Rule 32 Court and the ACCA both rendered reasoned decisions on this IAC claim, and AEDPA review applies.

Washington has not shown that the ACCA unreasonably decided this claim.  He fails to show that the ACCA erroneously or unreasonably concluded that the postconviction proceeding was Washington's first opportunity to raise of claim of ineffective assistance of trial counsel.  Indeed, the United States Supreme Court has explained that an appellate court is hamstrung to review an IAC claim in the absence of a trial record. *See Massaro*, 538 U.S. at 506–07.  Additionally, Washington cannot show prejudice.  He raised this ineffective assistance of trial counsel claim in the Rule 32 proceedings, and for the reasons explained above, he has not established entitlement to relief on his claim that trial counsel were ineffective for failing to object to the admission of photographic and videotaped evidence of the crime scene.

In sum, Washington has not overcome the deference to which the state court's ruling on this claim is entitled, and he has not rebutted the presumption that the state court's findings of fact on this claim are correct.  On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

## B.   Washington's *Brady* Claims

Washington further claims that the State withheld exculpatory information and information favorable to the defense that was relative to either guilt or innocence and/or to punishment, in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), other federal law,

and his federal constitutional rights. (Doc. 1 at 77–79).  In his petition, he alleges that the prosecution did not disclose "information about deals and incentives offered, on information and belief, to Adrianne Merritt in exchange for her testimony." (*Id.* at 78, para. 238).  In his brief, he additionally argues that the prosecution withheld a December 8, 2003 DNA report (doc. 20-14 at 128) concerning the hair evidence presented at trial, despite his counsel's specific request, and the trial court's order, for the prosecution to produce copies of reports issued by the DNA testing laboratory. (Doc. 32 at 37).

Under clearly established Supreme Court precedent, a *Brady* claim consists of three elements:  (1) the evidence must be favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be "material," *i.e.*, prejudice must have ensued from its non-disclosure. *Banks*, 540 U.S. at 691; *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).  Evidence is "material" under *Brady* where there exists a "reasonable probability" that, had the evidence been disclosed, the result at trial would have been different. *Smith v. Cain*, 565 U.S. 73, 75 (2012); *Banks*, 540 U.S. at 698–99.  A reasonable probability does not mean that the defendant would more likely than not have received a different verdict with the evidence, only that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial. *Smith*, 565 U.S. at 75; *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).  *Brady*'s materiality standard mirrors the prejudice prong of the *Strickland* analysis. *See United States v. Bagley*, 473 U.S. 667, 682 (1985). The defendant has the burden to establish a *Brady* violation. *United States v. Stein*, 846

F.3d 1134, 1145 (11th Cir. 2017); *United States v. Esquenazi*, 752 F.3d 912, 933 (11th Cir. 2014).

Washington raised the *Brady* claim concerning deals and incentives allegedly offered to Adrianne Merritt ("Merritt") in his Amended Rule 32 Petition and in his federal habeas petition. (Doc. 20-12 at 99–101).  However, neither his Amended Rule 32 Petition nor his federal habeas petition references the prosecution's failure to disclose the December 2003 DNA report.  It appears from the state court record that Washington did not raise the issue of this DNA report with the Rule 32 Court until the evidentiary hearing on June 25, 2007.

On July 13, 2007, the Rule 32 Court dismissed Washington's *Brady* claim as procedurally barred, for the reasons stated below:

> This ground is procedurally barred per Rule 32.2(a)(3) as it could have been but was not raised at trial.  This ground is also procedurally barred per Rule 32.2(a)(5) as it could have been but was not raised on appeal.  This claim appears to be brought under *Brady v. Maryland*, 373 U.S. 83 (1963) which held "suppression by prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution." *Id.* at 87.  However, if new evidence is alleged in the Rule 32 petition, a Petitioner may overcome this bar by showing that there is newly discovered evidence.  The standard for reviewing post conviction review of newly discovered evidence is that the "newly discovered evidence must not have been known at trial or have been discoverable through the exercise of due diligence, and it must be such that would have probably prevented conviction."  This must be proven by a preponderance of the evidence.  *Elliott v. State*, 601 So. 2d 1118, 1119 (Ala. Cr. App. 1992).
> While counsel for Petitioner did allege at the hearing on this Rule 32 Petition that they had received a DNA report two

> weeks ago prior to the hearing that contained new evidence,
> this information is not found in his Amended Rule 32 Petition.

(Doc. 20-32 at 56).

On appeal, the ACCA affirmed, explaining:

> This Court has frequently held that *Brady* claims are
> procedurally barred in a postconviction proceeding. *See
> Madison v. State,* 999 So.2d 561 (Ala. Crim. App. 2006); *Hyde
> v. State,* 950 So.2d 344 (Ala. Crim. App. 2006); *Duncan v.
> State,* 925 So. 2d 245 (Ala. Crim. App. 2005); *Barbour v. State,*
> 903 So.2d 858 (Ala. Crim. App. 2004).
>      The circuit court did not abuse its discretion in finding
> that Washington's *Brady* claim was procedurally barred
> because he failed to plead that this claim was based on newly
> discovered evidence.

*Washington*, 95 So. 3d at 57.

The Court begins with Washington's claim about Merritt before turning to his claim

about the DNA report.

**1.     The Merritt Claim**

The Respondents argue that this *Brady* claim is due to be denied for several reasons:

(1) Washington did not adequately plead the claim in his federal habeas petition; (2) the

state court correctly held that the claim was procedurally defaulted; and (3) the claim lacks

merit. (Doc. 18 at 77–78). The Court finds that Washington is not entitled to relief on this

claim because he did not adequately plead it, and in any event, the claim was procedurally

defaulted.

In this action, Washington alleges that the prosecution did not disclose information about deals and incentives offered, on information and belief, to Merritt[22] in exchange for her trial testimony.  However, Washington does not describe "the information about deals and incentives offered, on information and belief," to Merritt in exchange for her testimony.  Rule 2(c) requires a habeas petitioner to specify all grounds for relief available to him and state the facts supporting each ground.  Washington has not complied with Rule 2(c) requirements because he does not allege sufficient facts to support a finding that the alleged evidence of deals offered in exchange for Merritt's testimony exists, let alone that the evidence was suppressed, favorable, or material. *See Banks*, 540 U.S. at 691.

Even if Washington had adequately pleaded this claim in this Court, he is still not entitled to federal habeas relief because the claim was procedurally defaulted.  Washington acknowledges that Alabama courts consider a *Brady* claim procedurally barred if "the petitioner fails to plead that his claim is based on newly discovered evidence and could not have been raised at trial or on direct appeal." *See Washington*, 95 So. 2d at 56 (citing *McWhorter v. State*, 142 So. 3d 1195, 1260 (Ala. Crim. App. 2011)).  Washington does not argue, let alone establish, that this *Brady* claim is based on newly discovered evidence.  Additionally, Washington does not argue, let alone establish, that he has shown cause and prejudice sufficient to overcome the procedural default.  In sum, Washington is not entitled to federal habeas relief on this claim.

---

[22]  In his brief, Washington refers to her as "Adrianne Merritt."  In the trial transcript, she is identified as "Adriane Meritt."  (Doc. 20-5 at 182).  Regardless of the difference in spelling, this is the same person.

### 2.      The DNA Report Claim

The Respondents argue that Washington's *Brady* claim concerning the December 2003 DNA report is due to be denied for several reasons:  (1) Washington did not raise the claim in his federal habeas petition; (2) the state court correctly held that the claim was procedurally defaulted; and (3) the claim lacks merit.  For the reasons explained below, the Court concludes that Washington's *Brady* claim concerning the DNA report is due to be denied both because he did not plead it in his federal habeas petition and because it was procedurally defaulted.

First, this *Brady* claim is due to be denied because Washington did not plead it in his habeas petition. (*See generally* doc. 1).  Rule 2(c) requires a habeas petitioner to specify all grounds for relief available to him, state the facts supporting each ground, and state the relief requested.  Consequently, this claim is due to be denied because it does not satisfy Rule 2(c).

Even if Washington had adequately pleaded this claim in this Court, he is still not entitled to federal habeas relief because the claim was procedurally defaulted.  As explained above, Alabama courts consider a *Brady* claim procedurally barred if "the petitioner fails to plead that his claim is based on newly discovered evidence and could not have been raised at trial or on direct appeal." *See Washington*, 95 So. 2d at 56 (citing *McWhorter*, 142 So. 3d at 1260). Washington insists that he specifically alleged in state court that he was not aware of the December 2003 DNA report until May 31, 2007—well after his trial and the ACCA's affirmance of his conviction and sentence—and thus, according to Washington, he could not have raised this *Brady* claim at trial or on direct

appeal.  But the state court record confirms that these allegations do not appear in Washington's Amended Rule 32 Petition.  Instead, they appear in an Addendum attached to Washington's motion for leave to amend by addendum his Amended Rule 32 Petition. (Doc. 20-14 at 103–06, 121–23).  The Rule 32 Court, however, denied Washington's motion to amend his Amended Rule 32 Petition. (Doc. 20-15 at 37–39).  Thus, because Washington failed to plead in state court that this *Brady* claim was based on newly discovered evidence and could not have been raised at trial or on direct appeal, it was procedurally defaulted under Alabama law. *See Martinez*, 566 U.S. at 9.

As explained earlier, Washington may overcome a procedural default by showing cause and prejudice.  "[C]ause and prejudice parallel two of the three components of the alleged *Brady* violation itself"—suppression and materiality. *Strickler v. Greene*, 527 U.S. 263, 282 (1999); *see also Rossell v. Macon SP Warden*, 2023 WL 34103, at *3 (11th Cir. Jan. 4, 2023) ("Applying the cause and prejudice analysis to a *Brady* claim is closely intertwined with reviewing the merits of the *Brady* claim.").  "The suppression of evidence constitutes cause for the failure to assert the *Brady* claim in the state courts," and "[p]rejudice exists if the suppressed evidence was material for *Brady* purposes." *Rossell*, 2023 WL 34013, at *3 (citing *Strickler*, 527 U.S. at 282).  "Therefore, resolving the merits of a *Brady* claim is essentially required to resolve the procedural default challenge." *Id.*

The Court will assume without deciding that the December 2003 DNA report was suppressed, and therefore that Washington has shown cause for the procedural default.  But on this record, Washington has not shown prejudice because he fails to show that the allegedly suppressed DNA report is material.  Evidence is "material" for *Brady* purposes

where there is a "reasonable probability" that the result at trial would have been different if the evidence had been disclosed. *Smith*, 565 U.S. at 75.  The *Brady* materiality standard mirrors the "prejudice" prong of the *Strickland* analysis. *See Bagley*, 473 U.S. at 682; *Tanzi v. Sec'y, Fla. Dep't of Corr.*, 772 F.3d 644, 661 & n.4 (11th Cir. 2014).

Washington argues that evidence that hair found in Julian McKinnon's hand "came from someone other than Mr. Washington would have been critically important." (Doc. 32 at 37).  The Court understands this portion of Washington's argument to be that the December 2003 DNA report undermines the prosecution's evidence at trial that hair found clenched in Julian McKinnon's hand was consistent with that of a black male.  Washington also argues that the December 2003 DNA report "described hair fragments in a way that was inconsistent with other State evidence." (*Id.*).  Although not a model of clarity, the Court understands Washington's argument to be that, prior to trial, trial counsel had access to a report describing material collected from Florence McKinnon's robe as "fibers," but the December 2003 DNA report described the robe material as "hairs"; and if Washington's counsel had known that the materials were hairs (not fibers), the hairs could and should have been DNA tested, the results of which would have impacted the jury's verdict. (*See* doc. 20-14 at 122–23, *cited in* doc. 32 at 37).[23]

Assuming without deciding that Washington is correct that the December 2003 DNA report undermines the hair evidence presented at trial, Washington has not shown a reasonable probability that he would have been found not guilty if this evidence had been

---

[23] Washington lays out this argument in his Addendum to his Amended Rule 32 Petition (doc. 20-14 at 122–23), which he cites in his brief to this Court concerning this *Brady* claim (doc. 32 at 37).

presented, for at least two reasons.  First, the prosecution argued at trial, and the evidence established, that the hair found in Julian McKinnon's hand was consistent with that of a black male, not that the hair conclusively belonged to Washington.  Second, and more importantly, the December 2003 DNA report concerning the hair does not undermine the other evidence of Washington's guilt which was presented at trial, in particular the DNA evidence.  Pete Macchia of ADFS testified at trial that Washington's DNA was found near a doorknob in the McKinnons' home, both McKinnons' DNA was found in a bloodstain on Washington's shirt, and Mr. McKinnon's DNA was found in a bloodstain on Washington's sock.  Therefore, on this record, evidence which *might* show that the hair did not belong to Washington or that the hair was inconsistent with that of a black male[24] is insufficient to establish a reasonable probability that, had this evidence been presented at trial, Washington would not have been found guilty.

Similarly, Washington's speculation that DNA testing of hairs, if they were in fact hairs, found on Mrs. McKinnon's robe would have impacted the jury's verdict is insufficient to establish materiality on this record.  Even if those hairs had been tested, Washington fails to adequately explain how the results from such testing, without more, would undermine the significant evidence of guilt presented at trial.

Because he has not shown the likelihood of a different result sufficient to undermine confidence in the outcome of his trial, *see Smith*, 565 U.S. at 75, Washington has not shown that the allegedly suppressed DNA report was material.  Consequently, Washington has

---

[24] The Court need not, and does not, decide whether the December 8, 2003 DNA report undermines the evidence presented at trial that the hair was consistent with that of a black male.

not shown prejudice sufficient to excuse the procedural default in state court, and his *Brady* claim fails for this additional, independent reason.

## C.  Washington's Claim that Alabama's Capital Sentencing Scheme Violates *Ring v. Arizona*, 536 U.S. 584 (2002)

In his brief, Washington claims that Alabama's capital sentencing scheme is unconstitutional because his death sentence is based on factual findings made by the trial judge, not the jury, and that such judicial factfinding runs afoul of *Ring v. Arizona*, 536 U.S. 584 (2002).  He also contends that both the prosecutor's remarks to the jury and the trial court's instructions operated to absolve the jury of its sentencing responsibility in violation of the Constitution.  Further, Washington submits that the jury's non-unanimous vote on the death penalty (10–2) did not reliably establish beyond a reasonable doubt the existence of any aggravating circumstances as required by *Ring*. (Doc. 32 at 44–45).

The Respondents counter that this claim should be denied because (1) Washington did not raise it in his federal habeas petition, and (2) the ACCA correctly held that this claim was procedurally barred. (Doc. 33 at 83–85).

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed this claim, stating:  "This claim is procedurally barred pursuant to Rule 32.2(a)(2) as it was raised or addressed at trial.  It also fails per Rule 32.2(a)(4) as it was raise[d] or addressed on appeal." (Doc. 20-32 at 58).

On appeal, the ACCA affirmed the Rule 32 Court's finding that Washington's *Ring* claim was procedurally barred. *Washington*, 95 So. 3d at 74.  The ACCA went a step further and also considered, and rejected, Washington's *Ring* claim on the merits. *See id.*  The

ACCA reasoned that the jury's unanimous verdict in the guilt phase established beyond a reasonable doubt the existence of the aggravating circumstances that the murders occurred during the course of a robbery and a burglary. *Id.*  Thus, the ACCA reasoned that the jury's unanimous guilty verdict in the trial's first phase necessarily established the aggravating circumstances which made Washington eligible for the death penalty; therefore, the ACCA found no *Ring* violation. *Id.*

This claim is due to be denied for at least two reasons.  First, it is due to be denied because Washington did not plead it in his federal habeas petition as required by Rule 2(c). (*See generally* doc. 1).

Even if this claim satisfied federal habeas pleading standards, it is nonetheless due to be denied because it was not unreasonable for the state court to conclude that the claim lacked merit.  In *Ring*, the Supreme Court overruled *Walton v. Arizona*, 497 U.S. 639 (1990), to the extent *Walton* authorized a judge, rather than a jury, to find an aggravating circumstance which supported a death sentence. 536 U.S. at 588–89.  The *Ring* Court concluded that "[c]apital defendants, no less than noncapital defendants, . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id.* at 589.  As noted above, the ACCA determined that the jury's unanimous guilty verdict established beyond a reasonable doubt all the facts necessary to impose a death sentence in Washington's case, specifically the aggravating circumstances that the murders occurred during the course of a robbery and a burglary.  While his submissions reflect a disagreement with the ACCA's decision, Washington has not shown that the decision was "so obviously wrong as to be 'beyond any possibility for fairminded

disagreement.'" *See Shinn*, 592 U.S. 111, 124 (2020) (quoting *Harrington*, 562 U.S. at 103); *see also Moody v. Thomas*, 89 F. Supp. 3d 1167, 1239 (N.D. Ala. 2015) (rejecting the petitioner's *Ring* claim for similar reasons).  On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

## D.  Washington's Claim that Alabama's Method of Execution is Unconstitutional

In his brief, Washington claims that Alabama's three-drug lethal injection protocol amounts to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.  He also contends that the Alabama state courts erred in denying this claim as being procedurally defaulted. (Doc. 32 at 45–46).  The Respondents counter that this claim should be denied because (1) Washington did not raise it in his federal habeas petition, and (2) the ACCA correctly held that this claim was procedurally barred. (Doc. 33 at 86–88).

Following oral argument on the State's motion to dismiss, the Rule 32 Court dismissed this claim, stating:  "This ground fails pursuant to Rule 32.2(a)(3) as it could have been but was not was raised at trial.  Also, this ground fails as per Rule 32.2(a)(5) as it could have been but was not raised on appeal." (Doc. 20-32 at 58).

On appeal, the ACCA affirmed the Rule 32 Court's finding that Washington's method of execution claim was procedurally barred and further concluded that the claim lacked merit.  The ACCA explained:

> This Court has repeatedly held that this claim is procedurally barred in a postconviction proceeding because it could have been raised at trial or on appeal but was not.  *See Lee v. State,* 44 So.3d 1145 (Ala. Crim.App.2009); *Bush v. State,* 92 So.3d 121 (Ala.Crim.App.2009); *Boyd v. State,* 913

So.2d 1113 (Ala.Crim.App.2003); *Davis v. State,* 720 So.2d 1006 (Ala.Crim.App.1998).

Moreover, as we stated above, the Alabama Supreme Court in *Ex parte Belisle, supra,* held that Alabama's method of administering the lethal injection, a three-drug protocol, is constitutional.  Thus, this claim has been determined adversely to Washington.

*Washington*, 95 So. 3d at 74–75.

This claim is due to be denied for two independent reasons.  First, Washington did not plead this claim in his federal habeas petition as required by Rule 2(c). (*See generally* doc. 1).  Consequently, this claim is due to be denied because it does not satisfy Rule 2(c).

Even if Washington satisfied federal habeas pleading standards, this claim is nonetheless due to be denied because it was not unreasonable for the state court to conclude that the claim lacked merit.  Washington cites no United States Supreme Court decision holding that *any* method of execution—let alone Alabama's lethal injection protocol—is unconstitutional, and this Court's independent research revealed none. *See Glossip v. Gross*, 576 U.S. 863, 869 (2015) (explaining that the Supreme Court "has never invalidated a State's chosen procedure for carrying out a sentence of death as the infliction of cruel and unusual punishment" (quoting *Baze v. Rees*, 553 U.S. 35, 48 (2008) (plurality op.))). Washington has not overcome the deference to which the state court's ruling on this claim is entitled, and he has not rebutted the presumption that the state court's findings of fact on this claim are correct.  On AEDPA review, Washington is not entitled to federal habeas relief on this claim.

## VII.  CERTIFICATE OF APPEALABILITY

Under AEDPA, before a petitioner may appeal the denial of a § 2254 habeas corpus petition, the petitioner must obtain a Certificate of Appealability ("COA"). *Miller-El v. Johnson*, 537 U.S. 322, 335–36 (2003); 28 U.S.C. §2253(c)(2).  Thus, this Court is required to issue or deny a COA when entering a final order, such as this one, that is adverse to a federal habeas petitioner. *See Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts*.

A COA will not be granted unless the petitioner makes a substantial showing of the denial of a constitutional right. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Miller-El v. Johnson*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983).  To make such a showing, the petitioner must demonstrate that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *Tennard*, 542 U.S. at 282; *Miller-El*, 537 U.S. at 336.  This Court finds that Washington's claims do not satisfy either standard.  Thus, Washington is not entitled to a COA.

## VIII.  CONCLUSION

Accordingly, for the reasons stated, and for good cause, it is

ORDERED as follows:

1.      All relief requested in the Petitioner's original federal habeas corpus petition (doc. 1), as supplemented by his briefs in support (docs. 32, 38), is DENIED;

2.      The Petitioner's request for an evidentiary hearing (doc. 1 at 82) is DENIED;

3.      The Petitioner is DENIED a Certificate of Appealability on all claims;

4.      The Respondents' motion for a timely ruling (doc. 58) is DENIED as moot;

5.      An appropriate Final Judgment will be entered contemporaneously herewith.

DONE this 23rd day of September, 2024.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE